## Case No. 7,069.

### The IRONSIDES.

[4 Biss. 518.] [1]

District Court, N. D. Illinois. May, 1869.

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

Willey & Cary, of Cleveland, for the messenger.

DRUMMOND, District Judge. A case has been submitted to the court upon, substantially, an agreed statement of facts, upon which it is claimed, on the part of the defense, that the court has no jurisdiction of the case. It was a libel filed by Dyer & Payne, as coal and wood merchants of Chicago, for furnishing to the propeller, in that city, on the 13th day of May, 1868, a quantity of coal on the credit of the vessel, the facts being that neither the owner nor master of the propeller had money or credit to purchase the same.

At the time, the propeller was owned by Dwight Scott, a citizen of Ohio. On the 30th of May, 1868, he filed his petition in bankruptcy in the district court of the United States for the Northern district of Ohio, and on the first of June of that year was duly adjudged a bankrupt by that court. At the time of the seizure under the monition issued in this case, on the 5th of June, 1868, the propeller was in the possession and under the control of the marshal of the North-

ern district of Ohio, as messenger under the proceedings in bankruptcy, it being claimed that he was entitled to the possession of the propeller under the rules and regulations in bankruptcy in that court and by virtue of the bankrupt law. When the seizure was made by the marshal of this court a stipulation for release was given, protest being made at the time of the seizure.

When the seizure was made by the marshal, and the answer and claims were filed, no assignee had been appointed by the district court of the United States for the Northern district of Ohio. There is nothing stated in the case from which it can be seen that the marshal of the Northern district of Ohio took possession under any warrant or process from the court in bankruptcy, but the inference is, from the foregoing statement, that he took possession, as already intimated, because he claimed that he had a right of possession under the bankruptcy law, by virtue of the petition filed on the 30th day of May, 1868.

The first question to be determined under this state of facts is: What was the position of the marshal of the Northern district of Ohio with reference to the propeller? Was he in any other or different position from that of the owner of the propeller in case proceedings in bankruptcy had not been instituted? In other words, was the propeller in the custody of the law and not liable to seizure or proceedings against her on the part of the admiralty court?

It will be seen from the statement which has been made that no objection is taken on the ground that it is not a case of a proper maritime lien against the propeller, but the objection only arises from the proceedings in bankruptcy in the court in Ohio. It has been decided by the supreme court of the United States (Taylor v. Carryl, 20 How. [61 U. S.] 583) that where a vessel is in the custody of an officer under a process from a state court it is not liable to seizure by the marshal upon a libel filed, even in the case of a regular maritime lien; that the vessel is in the custody of the law and cannot be seized by the marshal and is not subject to the jurisdiction of the admiralty court in such a case, and this rule would apply if it is plain that the messenger under proceedings in bankruptcy held the vessel in such a way as to make him the custodian of the court, or held the vessel under the process of the court.

From what has been already said I think it will be apparent that this was not the actual position of affairs. It is important under the bankrupt law to determine what is the condition of the property of the bankrupt, in the case of a voluntary proceeding in bankruptcy, between the time of filing the petition and the date of the appointment of the assignee. It is rather a singular omission in the bankrupt law that no distinct provision seems to have been made in the case of voluntary bankrupts for the control and disposition of the property between the date of filing the petition and that of the appointment of the assignee, and the rules established by the supreme court do not appear to have made any distinct provision for such a case.

The 11th section of the bankrupt law states what is to be done where a voluntary petition is filed. It declares that the judge, or, "if there be no opposing party," the register, shall "issue a warrant, * * * directed to the marshal of said district," and it proceeds to declare what authority is given to the marshal as messenger, authorizing him forthwith as messenger, to publish notices in such newspapers (as the warrant specifies[2]), to serve written or printed notice, by mail or personally, on all creditors upon the schedule filed with the debtor's petition, or whose names may be given to him in addition by the debtor, and to give such personal or other notice to any persons concerned as the warrant specifies, which notice shall state: that a warrant in bankruptcy has been issued against the estate of the debtor," &c. The warrant provided by the rules, which is form number 6, makes no provision whatever, and gives no authority to the marshal, as messenger, to take possession of the goods of the bankrupt, and the 13th rule established by the supreme court in bankruptcy, in the first part of it, seems to contemplate only the case of the appointment of the marshal as messenger in an involuntary proceeding in bankruptcy. The only warrant in bankruptcy that is referred to in the rules in the case of voluntary proceedings is form 6. I recollect a case where an application was made to this court for the appointment of a person specially to take possession of the property of a bankrupt between the date of the filing of the petition and the appointment of the assignee, and the court made an order appointing a proper person to take charge of the property during that time.

Now the 14th section of the bankrupt law provides that the assignment shall relate back to the commencement of the proceedings in bankruptcy, so that the property shall all vest in the assignee from that time, and therefore, by relation, the assignee is clothed with all the powers of the owner of the property from the date of filing the petition.

In involuntary proceedings a different provision is made. In that case under the 40th section it is declared that the court may issue a warrant to the marshal commanding him to arrest the alleged bankrupt, and also forthwith to take possession provisionally, of all the property and effects of the debtor and safely keep the same until the further

---

[2] "As the marshal shall select, not exceeding two." Amendment of June 22, 1874 [18 Stat. 178].

order of the court, which is called a "warrant of seizure" and is numbered "form No. 59," under which the marshal, as messenger, can take possession of the property of the bankrupt.

It is difficult to account for this difference between the case of a voluntary and involuntary proceeding as to the property of a bankrupt except upon the presumption that it was supposed that in the case of a voluntary petition the bankrupt thereby manifesting his willingness that all his property might go for the benefit of the creditors, that it would remain subject to the order of the court until an assignee in bankruptcy was appointed, and therefore no special clause was inserted in the law for such a contingency. However this may be, such seems to be the fact, and we have to take the law as it is.

From what has already been stated it is apparent that it is competent for the court in bankruptcy, under certain circumstances, to take possession of the property where a voluntary petition is filed, and it is possible that if that had been done by a proper order or warrant of the court in this case, that the rule might have been different from what it is under the actual state of facts; because I think it is inferable that the marshal merely took possession of this property as the representative of the creditors of the bankrupt, without any other or different power or right from that with which the bankrupt himself would have been clothed if no proceedings in bankruptcy had been instituted.

The question is, what was the intention of the bankrupt law as to the disposition of the bankrupt's property and as to the liens which might exist against it at the time that the petition was filed in a voluntary proceeding. Was it the intention of the bankrupt law to divest and dissolve all liens, and proceedings to enforce a lien in the admiralty court?

Under the 14th section the law manifests its intention clearly to dissolve all process of attachment,—all mesne process of attachment—on the property of the bankrupt, and declares that all such process shall be dissolved if the attachment was made within four months next preceding the commencement of the proceedings in bankruptcy, but it has said nothing about maritime liens.

What is a maritime lien? It is what is technically termed a "jus in re"; that is to say, that the person in whose favor the lien exists can pursue the res and the latter remains subject to the right of the claim until it is finally satisfied, provided it be enforced in conformity with the rules of an admiralty court. In other words, the res, in whosesoever hands it may come, is subject to the lien which exists against it.

Was it the intention of the bankrupt law to divest this lien? Is it fairly within the meaning of the 14th section, in relation to attachments? I am inclined to think that it

is not. As already said, the lien exists against the res independent of the process. In ordinary cases of attachment, it is the attachment that operates as the lien against the property, and the bankrupt law intends that in all such cases the attachment should be dissolved, if commenced within a certain time before the proceedings in bankruptcy. The proceedings in bankruptcy would not divest a mortgage lien. They would not divest any valid subsisting lien not named in the bankrupt law, but which could be enforced in conformity with law, and I think that it was not the intention of the bankrupt law to interfere with any valid subsisting lien except those specifically named, but that such liens should be enforced in the usual way. Therefore I think that it was not the purpose of the law to divest any valid subsisting maritime lien which might exist against the property of the bankrupt at the time that the petition was filed, but that it was the intention of the law that the assignee should take the property subject to that lien.

Take the case of a valid subsisting mortgage against the property of a bankrupt, good by virtue of the law of the state where the property exists. There could be no question that proceedings in bankruptcy would not divest that lien; the mortgagee would have a right to enforce the mortgage in a legal and proper manner, notwithstanding proceedings in bankruptcy. So here, where there is a valid maritime lien against the property of the bankrupt at the time of the commencement of the proceedings in bankruptcy, it can be enforced according to the rules of the admiralty court.

The only question is, in what tribunal—a court of bankruptcy or a court in admiralty—it is to be ascertained whether a maritime lien exists.

There really cannot be any conflict of jurisdiction between the court in Ohio and the court here, as there might be between a federal and a state court, but the two courts of the United States necessarily proceed in harmony with each other.

The first section of the bankrupt law declares that "the jurisdiction hereby conferred shall extend" among other things, "to the ascertainment and liquidation of the liens and other specific claims," upon the property of the bankrupt, and it seems to me that the court of admiralty where the proceedings have been commenced in the usual and regular way, and where, in conformity with the law and practice of the court, the case can proceed to proofs, hearing, and decree, is the proper forum to determine whether there is a valid maritime lien.

It is true that the district court of the United States for the Northern district of Ohio, is clothed with the same admiralty power as this court, but it is clear that it may become a very serious question whether there is a lien in a given case, and if the bankruptcy court is to ascertain whether there is a mar-

itime lien upon the property belonging to a bankrupt at the time of filing the petition, it would become the duty of that court to make a great number of collateral issues. For instance, it might have to direct proceedings to be commenced in a regular way in order to determine whether there was a valid maritime lien. Undoubtedly where before a person took possession of the property of a bankrupt under the proceedings in bankruptcy there were proceedings commenced under a state law by which state law it was claimed that there was a lien, it would be proper for the court in bankruptcy to allow the suit and prosecution in the state court to proceed in order that it might be ascertained whether or not there was a valid lien upon the property under the state law. So in this case the court in bankruptcy would be regulated by the adjudication of this court upon the point whether or not there was a valid maritime lien, and would direct the assignee to proceed in conformity with the decree of this court, so that there is no conflict between the two courts. If that court had actually taken possession by virtue of its officer of the property of the bankrupt it might be improper for this court to interfere, but until that is done I think the property of the bankrupt remains subject to all the liens which existed at the time of the filing of the petition, and they can be enforced. So when the first section of the law uses the words "to the ascertainment and liquidation of the liens and other specific claims thereon," it means where those liens or claims have not been already determined and ascertained by other competent tribunals; where, in other words, the question naturally arises in the course of the proceedings in bankruptcy, there the court is to determine whether or not there is a lien, and according as it may determine, decide upon its liquidation, or otherwise.

For these reasons, I think that the objection taken by the defense must be overruled, and the jurisdiction of the court in admiralty maintained. Of course it will be competent for the messenger, or the assignee, if one has since been appointed, to appear in this case as the representative of the creditors and to show, if it can be done, that there is no valid subsisting maritime lien upon this property, but, if there is, I hold it to be the duty of this court to maintain the libellants in their right to that lien.

There is an argument ab inconvenienti which is perhaps not entirely destitute of force. These supplies were furnished to the propeller in this port. All the evidence in relation to the claim and the necessity of the supplies furnished for the use of the propeller exist here. If the question were to be determined by the district court of Ohio, of course it would be necessary that proof should be sent there. That involves additional labor and expense upon the libellant, which, in the absence of any clear provision of law rendering it compulsory I do not feel inclined to subject him to. The jurisdiction of this court will be sustained.