In the Matter of BAUER STEAMSHIP
CORPORATION, Bankrupt.

United States District Court
S. D. New York.
April 19, 1957.

Hill, Rivkins, Middleton, Louis & Warburton, New York City, for trustee, Leo P. Cappelletti, New York City, of counsel.

Nelson, Healy, Baillie & Burke, New York City, for Panos S. Coumantaros, Nicholas J. Healy, 3rd, Richard T. O'Connell, New York City, of counsel.

DIMOCK, District Judge.

The trustee in bankruptcy petitions to review an order of Referee Robert P. Stephenson directing payment to a shipowner of certain "subfreights" collected by the trustee.

The bankrupt, Bauer Steamship Corporation, was the time charterer of the S.S. Panagiotis Coumantaros, owned by Panos S. Coumantaros. The charter party contained the provision "That the Owner shall have a lien on all cargoes, and all subfreights for any amounts due under this charter." The ship sailed from St. John, New Brunswick, on February 9, 1954, having on board, among other cargo, aluminum products consigned to

the Greek Government at Piraeus under bills of lading providing for payment of the subfreights "collect", i. e. not in advance but on delivery of the cargo at Piraeus.

On February 11, 1954, the charterer filed a petition for an arrangement in this court and was thereafter duly authorized to continue the operation of its business until the further order of this court. On March 5, 1954, while the ship was still en route to Piraeus, the charterer was adjudged bankrupt.

At the time of the filing of the petition the charterer was indebted to the owner in the sum of $15,749.90 for charter hire.

On March 14, 1954, the aluminum products were discharged and delivered to the Greek Government after entry of an order of the referee authorizing the bankrupt to collect the subfreights without prejudice to any lien that the owner might have thereon. Thereafter the trustee in bankruptcy received from the Greek Government the subfreights in a net amount of $10,139.17 under a similar order of the referee which preserved any liens which the owner had on them.

The referee eventually directed the payment of the subfreights to the owner and the trustee brings this petition for review.

The owner maintains that he had a lien on the charterer's interest in the cargo, that the charterer's interest in the cargo was a lien for the subfreights from the instant of loading and that, when the cargo was delivered and the subfreights became due, the owner's lien attached to the subfreights. The trustee maintains that there could have been no lien on the subfreights at the time of the filing of the petition under the Bankruptcy Act because the subfreights were not due then.

■■ I have some difficulty in seeing that the question argued by the parties is really presented. The contract was executory at the time of the filing of the petition. The subfreights were unearned. It seems to me that the trustee was not entitled to them. In re Jensen,

7 Cir., 200 F.2d 58, certiorari denied 345 U.S. 926, 73 S.Ct. 785, 97 L.Ed. 1357. He might have become entitled to them if he had adopted the contract embodied in the charter party. Bankruptcy Act, sec. 70 (b), 11 U.S.C. § 110(b). Then, however, he would have taken them subject to all equities to which they would have been subject in the hands of the charterer. In re Italian Cook Oil Corp., 3 Cir., 190 F.2d 994. Thus the lien of the owner, even if non-existent at the time of the filing of the petition, came into being when the subfreights were earned by the trustee and, under the letter of the charter party, attached to them.

Since the foregoing point has not been argued before me and since the point that was argued results in the same conclusion, a decision for the owner, I will not rest my determination upon it but will pass to the point argued.

The trustee's position, as I understand it, is that the contract between the charterer and the owner was merely an agreement by the charterer to give the owner a lien on the subfreights when they should be earned so that at the time of the filing of the petition the owner had no more than a simple contract claim.

■ There is no authority for that position and ample authority for the proposition that from the moment of the loading of the cargo the owner had a lien on the freights to be earned. From the moment of loading the charterer had a lien on the cargo as against the consignee to secure the subfreights. The Bird of Paradise, 5 Wall. 545, 563, 18 L.Ed. 662; Blowers v. One Wire Rope Cable, D.C. S.D.N.Y., 19 F. 444. By the charter party the charterer gave to the owner a lien on this property interest in the cargo as against the charterer to secure the charter hire. On default in the payment of the charter hire the owner could have held the goods as against the consignee and the charterer until the consignee paid to the owner the subfreights. Gracie v. Palmer, 8 Wheat. 605, 5 L.Ed. 696. Instead of doing so, the owner delivered the goods to the consignee after the entry of an order of the referee here-

in authorizing the bankrupt to receive the subfreights without prejudice to any lien which the owner might have thereon.

The question thus arises whether the owner had a lien on the subfreights as against the charterer. He clearly did. An admiralty lien on property attaches to the proceeds of the property. Bank. of British North America v. Freights, etc., of the Hutton, 2 Cir., 137 F. 534, 536. The owner's lien on the charterer's security for the subfreights thus attached to the subfreights when the security was turned over in exchange for the subfreights. Carver's Carriage of Goods by Sea, 9th Ed., p. 985.

The result that I have reached is supported by Judge Addison Brown's opinion in Freights of the Kate, D.C.S.D.N.Y., 63 F. 707, 722, and by Robinson on Admiralty at p. 402.

Order confirmed.