**MARINE CHARTERING CO., Inc., a corporation, Plaintiff,**

v.

**SCHIRMER STEVEDORING COMPANY, Ltd., a corporation, et al., Defendants.**

No. 38358.

United States District Court
N. D. California, S. D.

Jan. 16, 1961.

Graham, James & Rolph, San Francisco, Cal., for Marine Chartering Co., Inc.

Lillick, Geary, Wheat, Adams & Charles, San Francisco, Cal., for Schirmer Stevedoring Co., Ltd.

John H. Black and Robert C. Taylor, San Francisco, Cal., for Seaboard Stevedoring Corp.

Dorr, Cooper & Hays, San Francisco, Cal., for William Dimond & Co., and Brady Hamilton Stevedoring Co.

McCutchen, Doyle, Brown & Enersen, San Francisco, Cal., for N. J. Goulandris, Ltd. and Sociedad De Navegacion Albion, S. A.

Thacher, Jones, Casey & Ball, San Francisco, Cal., for Parr-Richmond Terminal Co.

Wallace, Garrison, Norton & Ray, San Francisco, Cal., for Financiera Peruana, S. A.

Hall, Henry, Oliver & McReavy, San Francisco, Cal., for Port of Seattle.

WOLLENBERG, District Judge.

This is a suit under the Federal Interpleader Act (28 U.S.C. §§ 1335, 1397, 2361). Plaintiff Marine Chartering Co., Inc., has deposited $48,337.61 into court as representing the amount of freight payable by it as charterer of the vessel SS Areti S for one voyage. In its complaint the plaintiff alleges that adverse and conflicting claims to this freight money have been asserted by various claimants, nine of whom have appeared as defendants in this action. The plaintiff asks the court to determine who is entitled to payment, and seeks to be dismissed with an allowance of costs and attorneys fees from the funds deposited.

Many of the facts connected with the charter voyage were agreed by the parties in stipulations filed before trial. Essentially the controversy arose out of the insolvency of Naviera Andes Peruana S. A. ("Navandes"), a company with head offices in Lima, Peru, which on October 27, 1958, time chartered the Areti S from the vessel's owners ("Goulandris"). As time charterer, Navandes in turn subchartered the vessel to plaintiff under a charter party dated February 19, 1959, covering one voyage from the Pacific Coast to ports in the Caribbean Sea. In late May, 1959, the vessel was delivered under the voyage charter in British Columbia, where she commenced to load cargoes of wheat and lumber booked by the plaintiff. On June 10, 1959, before loading had been completed, the owners withdrew the vessel from Navandes upon the latter's failure to pay the hire then due under the basic time charter. By a new agreement dated June 10, 1959, Goulandris agreed directly with the plaintiff to complete the voyage to the Caribbean.

The voyage was completed by the vessel's owners, and the $48,337.61 deposited in court by the plaintiff represents the full amount of freight payable as provided in the agreement of June 10, 1959. Under that agreement, as well as under the provisions of the original voyage charter between the plaintiff and Navandes, freights were to be computed in accordance with the amount of cargo loaded, with deductions for various items of credit and expense arising in connection with the voyage. The court finds, pursuant to stipulation of the parties, that the plaintiff has accurately computed the $48,337.61 in freight payable under the agreement of June 10, 1959, the same amount that would have been payable under the voyage charter of February 19, 1959.

The owners claim the entire freight by virtue of their performance of the agreement of June 10, 1959. Defendant Financiera Peruana, S. A. ("Financiera") claims $45,000 of the amount deposited as assignee of freights payable to Navandes under the voyage charter of February 19, 1959. The seven remaining defendants, referred to collectively as the "stevedore claimants", differ among themselves as to the relative priority of their claims, but jointly assert that they are entitled to all freights as attaching creditors of Navandes, and by virtue of maritime liens in their favor for stevedoring and terminal services furnished to the Areti S and other vessels time chartered by Navandes. All of these services were furnished prior to commencement of the voyage in question, and the stevedore claimants do not contend that they were ordered by the plaintiff or Goulandris. The stevedore claimants attack the validity of the alleged assignment to Financiera, and likewise challenge the validity of the June 10, 1959 agreement between the plaintiff and Goulandris.

■ The record shows that the June 10th agreement was made after the vessel was withdrawn from time charter to Navandes. It is not disputed that Navandes failed to pay the installment of charter hire due Goulandris on that date.

The evidence is that Navandes was having difficulty meeting its financial obligations during May of 1959, and that by the first week in June it had closed its offices in Lima and its agent at San Francisco had resigned. When the installment of time charter hire falling due on June 10th was not paid, the owners were entitled to withdraw their vessel from Navandes and recharter it directly to the plaintiff.

The stevedore claimants seize upon a delay in loading the vessel at British Columbia, contending that this delay was purposely caused by the owners and the plaintiff to insure that freights under the February 19, 1959 voyage charter, which were not payable until completion of loading, would never become available to Navandes or its creditors. The record does show that loading was not completed until June 18, 1959, and that from June 3 until June 12, 1959, the vessel awaited berth at Port Tahsis, B. C., her last loading port. The record also shows, however, that the vessel was scheduled to be delivered to the plaintiff by May 15, 1959, but that she was not actually tendered by Navandes until May 27th. The uncontroverted testimony of plaintiff's witnesses was that because the vessel arrived late in British Columbia she lost her previously scheduled turn for the only berth existing at Port Tahsis. She was thus compelled to wait until June 12th when that berth again became available.

■■ The court is satisfied from the evidence that there was no conspiracy between the owners and the plaintiff to defraud or defeat the interests of Navandes or its creditors, and that there was no improper conduct on the part of the owners or the plaintiff in the events connected with the agreement of June 10, 1959. The stevedore claimants have offered in evidence certain documents said to be copies of loading schedules issued by the Port Tahsis Lumber Company [Defendants' Exhibit for Identification G(Sch)]. These documents were offered for the purpose of showing that the vessel could have been on berth to commence loading at Port Tahsis on June 3, 1959, as originally scheduled. A proper foundation was not laid for the admission of these records into evidence, and they were excluded upon the plaintiff's objection. At the conclusion of trial the stevedore claimants moved for a continuance to enable them to take testimony at Port Tahsis, B. C. to lay the necessary foundation for the admission of these loading schedules. The court has, however, considered these records as though they were in evidence and views them as neither inconsistent with the testimony of plaintiff's witnesses nor as adding anything to the record already made. This exhibit does not prove stevedore's contention of bad faith on the part of plaintiff or on the part of the owner. The motion for a continuance is therefore Denied.

■ What has been said makes it unnecessary to determine the validity of the alleged assignment of freights under the charter of February 19, 1959 to Financiera. Financiera's rights as assignee were no greater than those of Navandes. The withdrawal of the vessel from the basic time charter on June 10, 1959, also operated to terminate Navandes' performance of its voyage charter with the plaintiff, and to discharge the plaintiff's obligations thereunder. Clause 15 of the voyage charter provided that "Full freight to be prepaid, less disbursements for Owners' account at loading ports, in US dollars at San Francisco upon departure of vessel from last loading port." The withdrawal occurred eight days prior to the completion of loading, and thus no freight was payable by the plaintiff under the voyage charter of February 19, 1959. Pope & Talbot v. Guernsey-Westbrook Co., 9 Cir., 1947, 159 F.2d 139; Toyo Kisen Kaisha v. W. R. Grace & Co., 9 Cir., 1931, 53 F.2d 740.

The absence of freights due under the voyage charter of February 19th also defeats the interests of the stevedore claimants as attaching creditors of Navandes since there was nothing to be reached by their attachments. The maritime liens which the stevedore claimants

have asserted against the vessel's freights are likewise nonexistent. None of their stevedoring and terminal services were rendered for this voyage. Moreover, clause 18 of the basic time charter between Goulandris and Navandes reads as follows:

"Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the owners of the vessel."

■■ Under the rule of United States v. Carver, 1923, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361, the effect of this clause was to prevent the stevedore claimants from acquiring any lien against the vessel for their services. See also Seaboard Stev. Corp. v. Andros Legend (W.D. Wash.1959), 1959 A.M.C. 1775, where similar claims of some of these stevedore claimants were defeated on the same ground. The stevedore claimants gained nothing by attempting in this action to assert liens against the freights of the Areti S rather than against the vessel itself. There can be no lien on freights where there is no lien on the vessel. United States v. Robins Dry Dock & Repair Co., 1 Cir., 1926, 13 F.2d 808.

The freights deposited by the plaintiff were earned by the vessel, and the owners are entitled to them under the agreement of June 10, 1959. The court is also satisfied that the plaintiff acted properly in commencing this interpleader suit, and that it is entitled to be relieved from further liability to the adverse and conflicting claimants.

The court finds that the sum of $5,000 is a reasonable amount to be allowed the plaintiff for its attorneys fees, and awards this sum, plus costs, to the plaintiff out of the funds deposited. The balance shall be paid to the owners of the vessel, who shall recover their costs from the remaining parties defendant. Plaintiff shall prepare findings of fact and conclusions of law in accordance with this opinion.