In the Matters of **NORTH ATLANTIC AND GULF STEAMSHIP COMPANY,** Incorporated, Nortropic Shipping Company, Incorporated, Debtors.

United States District Court
S. D. New York.
April 25, 1962.

See also 200 F.Supp. 818.

Bergerman & Hourwich, New York City, Milton M. Bergerman, Joseph Calderon, Albert F. Reisman, New York City, of counsel, for trustee.

Haight, Gardner, Poor & Havens, New York City, John C. Moore, Charles S. Haight, Jr., New York City, of counsel, for Cargill, Incorporated, A/S Acadia and A/S Bruusgaard, Orvigs D/S A/S, D/S A/S Imica, A/S Mabella, D/S A/S Laly, I/S Norlindo, A/S D/S Neptun, Rederi A/B Sigyn, D/S A/S Progress, and A/S D/S Dannebrog.

Joshua Morrison, New York City, Samuel Rosenbloom, New York City, of counsel, for Ocean Tramping Corp.

Kirlin, Campbell & Keating, New York City, Raymond T. Greene, New York

City, of counsel, for Luciferus Cia, Maritima S.A., Cia.Mar. Adra S.A. Panama.

Healy, Baillie & Burke, New York City, Richard T. O'Connell, New York City, of counsel, for Arequipa Compania Naviera S.A. and National Shipping & Trading Corp.

Zock, Petrie, Sheneman & Reid, New York City, Francis J. O'Brien, New York City, of counsel, for T. Smith & Son, Inc.

**FREDERICK van PELT BRYAN, District Judge.**

This proceeding is brought on petition of the trustee of the debtor North Atlantic and Gulf Steamship Company, Incorporated (Norgulf) to determine the validity of liens claimed by shipowners and others on subfreights earned by vessels operated by Norgulf under time charter.

On May 23, 1958 an involuntary petition was filed against Norgulf under Chapter X of the Bankruptcy Act. The trustee was appointed on June 19, 1958. Prior to the filing of the petition Norgulf operated a number of cargo vessels which it had time chartered from the owners. The charters were the standard form Time Charter of the New York Produce Exchange.

Certain of the vessels operated by the debtor under charter had been turned back to the owners, prior to the filing of the petition. However, the debtor continued to operate some of the vessels which it had chartered during the period between the filing of the petition and the appointment of the trustee. The trustee continued to operate three vessels after his appointment.

Owners of various vessels claim liens against subfreights earned and due from shippers for cargoes carried aboard their vessels while operated by Norgulf. The liens, eighteen in number, are claimed for sums due to the owners by the debtor for charter hire of the vessels. Two stevedores who performed stevedoring services for chartered vessels operated by the debtor also assert liens against earned subfreights due from shippers.

Suits in admiralty in personam were brought by lien claimants for the amounts due from Norgulf in the United States District Courts in this District, the District of Maryland and the Eastern District of Louisiana, in some of which writs of foreign attachment were issued on subfreights due to debtor from shippers. In other suits by third parties against the debtor, subfreights due to the debtor from shippers were also attached by writ of foreign attachment. Other liens against earned subfreights were asserted merely by service of notice of lien upon the shipper from whom subfreights were due.

By agreement of the parties to the instant proceeding part of the funds against which liens have been asserted have been paid to the trustee pursuant to orders of the court, to be held subject to determination of the rights of the lienors. Other funds remain under attachment in the hands of shippers.

The trustee seeks a determination that all of the liens claimed are void as against him under § 67, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 107. He asks the court to direct that the sums against which the liens are asserted be paid to the estate as part of its general assets, and that the claims of the lienor claimants be classified as general unsecured claims against the estate. Failing this the trustee asks that certain of the claimed liens be reduced by amounts advanced by the debtor for the ordinary disbursements of the vessel and by amounts due from the owners for fuel on board vessels turned back to their possession, which was the property of the debtor. Finally, he questions the amounts of several of the liens claimed.

There are a large number of claims and vessels involved in this proceeding. It would serve only to confuse the issues were I to discuss each of the claims by name and in detail. A discussion of the principles applied to each of the various factual situations involved in the proceeding and resolution of the issues raised will enable the parties to make such calculations as may be necessary to ascer-

tain the final figures to be included in the order to be entered on the trustee's petition. The matter will be handled accordingly.

## I.

### The validity of the claimed liens as against the Trustee.

#### A. *Liens claimed by shipowners.*

The standard form Time Charters of the New York Produce Exchange under which vessels were operated by Norgulf provided that charter hire was payable by the charterer semi-monthly in advance and gave the shipowner "a lien upon all cargoes, and all sub-freights for any amounts due under this Charter."

The debtor paid the charter hire which became due on these charters until early in 1958, when it began to default on its obligations to various shipowners under the charters. The shipowners' liens involved here are claimed for installments of charter hire so in default.

The liens claimed by shipowners fall into three main categories:

(1) Liens on subfreights earned by vessels owned by claimants which arose and were asserted prior to the filing of the Chapter X petition on May 23, 1958;

(2) Liens on subfreights earned by vessels owned by claimants which arose prior to the filing of the Chapter X petition but were asserted after the petition was filed; and

(3) Liens claimed for charter hire against subfreights earned by a vessel other than the vessel for which the charter hire was due.

### (1)

As to the first two main categories the trustee relies primarily on § 67, sub. a of the Bankruptcy Act [1] which provides that

all liens against the debtor obtained by legal or equitable process or proceeding within four months before the filing of the petition are deemed void if, at the time the lien was obtained, the debtor was insolvent.

The claimant shipowners, on the other hand, contend first, that § 67, sub. a does not apply because their liens were maritime and not obtained by legal or equitable process; second, that their liens were not obtained within the four months period; and third, that it was not established that the debtor was insolvent at the time the liens were obtained.

Their third contention relating to failure to establish insolvency may be disposed of briefly at the outset of the discussion.

The petition was filed on May 23, 1958. At the hearing on these claims the trustee presented evidence through his accountant that the debtor was insolvent as of March 31, 1958. As I will point out, § 67, sub. a of the Bankruptcy Act is applicable only to a relatively small proportion of the claimed liens. All of such liens arose after March 31, 1958. Proof of insolvency as of that date is therefore controlling for purposes of § 67, sub. a.

The evidence of the trustee's accountant clearly established the debtor's insolvency on the controlling date. It was not impeached in any way and the claimants did not offer any countervailing evidence. I find that the debtor was insolvent within the meaning of § 67, sub. a on March 31, 1958.

I turn next, then, to the contention that § 67, sub. a does not cover the claimants' liens because they were maritime in nature.

[1]. § 67. "Liens and fraudulent transfers. (a) (1) Every lien against the property of a person obtained by attachment, judgment, levy, or other legal or equitable process or proceedings within four months before the filing of a petition initiating a proceeding under this Act by or against such person shall be deemed null and void (a) if at the time when such lien was obtained such person was insolvent or (b) if such lien was sought and permitted in fraud of the provisions of this Act: *Provided, however,* That if such person is not finally adjudged a bankrupt in any proceeding under this Act and if no arrangement or plan is proposed and confirmed, such lien shall be deemed reinstated with the same effect as if it had not been nullified and voided." (Emphasis theirs.)

The trustee takes the property of the debtor subject to all valid liens not expressly made void by the Bankruptcy Act. Cohen v. Wasserman, 238 F.2d 683 (1 Cir. 1956); Porter v. Searle, 228 F.2d 748 (10 Cir. 1955); Lockhart v. Garden City Bank & Trust Co., 116 F.2d 658 (2 Cir. 1940); In re Uni-Lab, Inc., 180 F. Supp. 176 (W.D.Pa.1959). Thus, if the claimed liens are valid and do not come within the purview of § 67, sub. a they may be enforced as against property in the trustee's hands or to which he may be entitled.

Maritime liens may arise out of contract only where all the provisions of the contract are maritime in nature. The Walter Adams, 253 F. 20, 24 (1 Cir. 1918); Freights of The Kate, 63 F. 707, 713 (S.D.N.Y.1894). The charter parties involved here are wholly of a maritime nature and liens based on them may therefore be maritime liens.

Shipowners' liens on earned subfreights due to a charterer are based on an ancient and standard charter provision, the origins and history of which are somewhat obscure. It is clear, however, that no such lien can arise without an express grant in the charter of the vessel earning the subfreights. Poor on Charter Parties and Ocean Bills of Lading (4th Ed.), p. 46; Carver's Carriage of Goods by Sea (10th Ed., Colinvaux), pp. 918, 919.

The shipowner's lien on subfreights permits him to obtain payment of monies due under the charter out of such subfreights earned by the vessel as remain unpaid by a shipper to the charterer. Carver's Carriage of Goods by Sea (10th Ed., Colinvaux), p. 920. Cf. Lord Alverstone, C. J., in Tagart, Beaton & Co. v. James Fisher & Sons (1903) 1 K.B. 391, 395.

The lien cannot arise unless there is a specific lien clause written into the charter party. Cf. Hall Corporation of Canada v. Cargo Ex Steamer Mont Louis and Subfreights Thereon, 62 F.2d 603 (2 Cir. 1933); N. H. Shipping Corp. v. Freights of the S/S Jackie Hause, 181

F.Supp. 165, 169 (S.D.N.Y.1960); The Solhaug, 2 F.Supp. 294, 299 (S.D.N.Y. 1931).

All of the charters in the case at bar contain such a specific lien clause. Each of them provides in Clause 18:

"That the Owners shall have a lien upon all cargoes, and all subfreights for any amounts due under this Charter. * * *"

Thus each of the liens on earned subfreights claimed by the shipowner here arises directly out of this charter provision.

Given such a charter provision the lien comes into existence in the following manner: When the vessel is loaded the charterer acquires a lien on the cargo as against the shipper to secure his subfreights. In re Bauer Steamship Corporation, 167 F.Supp. 909 (S.D.N.Y. 1957). The charterer's lien against the cargo to secure the subfreights is, however, in turn subject to such liens of the shipowner as may arise under the charter party. In re Bauer Steamship Corporation, supra.

If the cargo is delivered and the shipper pays the subfreights to the charterer in good faith, the shipowner's lien falls. Hall Corporation of Canada v. Cargo Ex Steamer Mont Louis and Subfreights Thereon, supra; American Steel Barge Co. v. Chesapeake & O. Coal Agency Co., 115 F. 669 (1 Cir. 1902); Tagart, Beaton & Co. v. James Fisher & Sons, supra; Molthes Rederi Aktieselskabet v. Ellerman's Wilson Line, Ltd. (1927) 1 K.B. 710. However, the shipowner may, at any time prior to payment of the subfreights by the shipper, assert his lien by giving notice to the shipper of its existence. American Steel Barge Co. v. Chesapeake & O. Coal Agency Co., supra; Freights of The Kate, supra. Such notice of lien bars the shipper from discharging his liability for the subfreights by payment to the charterer. Hall Corporation of Canada v. Cargo Ex Steamer Mont Louis and Subfreights Thereon, supra; Tagart, Beaton & Co. v. James Fisher & Sons, supra; Molthes Rederi Aktiesels-

kabet v. Ellerman's Wilson Line, Ltd., supra.

No legal or equitable process or proceeding is necessary for the creation of such a lien. Cf. The Ironsides, 13 Fed. Cas. 103, No. 7,069 (N.D.Ill.1869).

Section 67, sub. a applies to and invalidates only liens obtained through legal or equitable process or proceedings. It does not apply to statutory, contractual or common law liens. American Trust & Savings Bank v. Ruppe, 237 F. 581 (8 Cir. 1916); Wallace T. Bruce, Inc. v. Najarian, 249 Minn. 99, 81 N.W.2d 282 (Sup.Ct.1957); Gray v. Arnot, 31 N.D. 461, 154 N.W. 268 (Sup.Ct.1915). Also see 4 Collier on Bankruptcy (14th Ed.), pp. 48, 49.

Thus the owner's lien on subfreights earned by a vessel, for hire due under its charter, which has been asserted by notice to a shipper from whom the earned subfreights are due, is not void under § 67, sub. a even though obtained within four months before the filing of the petition and while debtor was insolvent. It is a maritime lien arising out of maritime contract and is not "obtained by * * * legal or equitable process or proceedings." It is valid and enforceable against the trustee.

It may be noted that some of the shipowners' liens are claimed against subfreights which were attached by writs of foreign attachment in suits in admiralty in various United States District Courts. Where such liens are for charter hire due prior to the filing of the petition and against subfreights earned on the vessel of the shipowner claimant prior to the filing they are not void merely because writs of foreign attachment were levied to enforce them.

Section 67, sub. a does not necessarily void a lien which is sought to be *enforced* by legal or equitable process or proceedings. Only liens which are "obtained" by legal or equitable process come within the purview of that section. 4 Remington on Bankruptcy (rev. ed. 1957), § 1610; Dickinson v. Orr, 94 F.2d 536 (8 Cir. 1938); Moore v. Green, 145 F. 472 (4 Cir. 1906); In re Van Meter, 135 F.Supp. 781 (W.D.Ark.1955); Wallace T. Bruce, Inc. v. Najarian, supra. The shipowners' liens on earned subfreights arose by virtue of the charter of the vessel and the subsequent loading and carriage of cargo aboard her. They were not "obtained" by the writs of foreign attachment. Such writs were merely a means by which the amounts of the liens could be collected. While the attachments for the enforcement of the liens may fall under § 67, sub. a, the liens themselves stand on their own footing unaffected by the invalidity of the proceedings for their enforcement.

Clearly this is so where notice of lien had been given by the owner to the shipper from whom earned freights were due prior to the attachment and prior to the filing of the petition. A variation occurs, however, in the instances where no notice other than the service of the writ had been given to the shipper. But this variation does not change the result. There are no formal requirements for notifying a shipper that a shipowner is asserting a lien on subfreights. The only requirement is that the shipper have actual notice of the lien.

Plainly, when a writ of foreign attachment against earned subfreights in a suit by the shipowner for charter hire due on the vessel from the charterer was served on the shipper he had actual notice of the shipowner's lien on the unpaid earned subfreights. Such notice given before payment by the shipper to the charterer was timely, in so far as the shipper was concerned.

Since the shipper had actual and timely notice the lien is valid quite apart from the legal process employed for its enforcement. The lien is therefore valid as against the trustee whether or not the writ of attachment is void under § 67, sub. a.

(2)

The second main category of shipowner's lien presents a further variation. In these instances the cargo was loaded on the vessel prior to the filing of the

petition, but notice of the lien on subfreights was not given to the shipper until after the petition was filed. Also, in some of the instances, the subfreights, unpaid by the shipper, had been attached prior to the filing of the petition, under writs of foreign attachment in suits in admiralty by third parties having unrelated claims against the debtor. In these attachment situations, the shippers, otherwise ready and willing to pay the subfreights to the debtor, were prevented from so doing by the attachments levied by these third parties  No notice of lien was given to the shipper until some two years after the filing of the petition though the attachments still remained in effect.

▮▮▮ Here the first question is whether the shipowners' liens on subfreights arose when the cargo was loaded aboard the vessel or only when notice of lien was given to the shipper by the owner. As I have already pointed out (supra, at p. 904), from the moment of the loading of the cargo the owner had a lien on the freights to be earned by the vessel just as "from the moment of loading the charterer had a lien on the cargo as against the consignee to secure the subfreights." In re Bauer Steamship Corporation, supra, 167 F.Supp. at p. 910. Plainly, then, these liens arose prior to the filing of the petition.

▮▮▮ The next question, therefore, is, was the attachment of earned subfreights in the hands of the shipper by third parties asserting claims against the debtor, before notice of lien was given by the shipowner, tantamount to payment of the subfreights to the debtor and thus to discharge of the lien which the shipowner had acquired when the cargo was loaded.

Had the third parties levying the attachments obtained a final adjudication of their claims against the debtor and satisfied a decree in their favor out of the funds attached, plainly the shipowner's lien would have been lost. But the attachments were obtained by legal process within four months of the filing of the petition and further proceedings in the suits in which they were obtained

were enjoined by the Bankruptcy Court. In view of the insolvency of the debtor at the time the attachments were obtained they are plainly void under § 67, sub. a of the Bankrupcty Act. Thus the subfreights under attachment remain unpaid and due and owing to the debtor by the shipper. The shipper therefore had notice of the shipowners' liens while the subfreights remained due and unpaid. The liens, based on contract and not arising out of legal process, arose when the loading of the cargo occurred. See In re Bauer Steamship Corporation, supra. They are valid as against the trustee even though actual notice to the shipper was not given until after the petition was filed.

Moreover, the delay in giving notice of lien could not have prejudiced the estate and there was no laches which would bar the shipowner claimants from enforcing their liens. Cf. The Kalorama, 10 Wall. 204, 77 U.S. 204, 19 L.Ed. 941 (1869).

## (3)

As to the third main category of shipowners' liens, liens are apparently claimed on subfreights for charter hire due on vessels other than the vessel on which the liened subfreights were earned.

▮▮▮ Liens on subfreights derive entirely from some specific provision in the charter of the vessel and have no basis other than that. There is nothing in any of the charters before me on which to predicate a shipowner's lien on subfreights earned by any vessel other than the one which is the subject of the charter. Shipowners have no valid or enforceable lien on such subfreights.

If attempts have been made to enforce such claims of lien by writs of foreign attachment, such attachments are void as against the trustee under § 67, sub. a. Such claims are not based on contract. They were obtained solely by legal process or proceedings within four months of the filing of the petition while the debtor was insolvent. Cf. W. & J. Tiebout, Inc. v. Milton, 143 F.2d 585 (2 Cir. 1944); Marine Chartering Co., Inc. v. Schirmer

Stevedoring Company, Ltd., 194 F.Supp. 488, 490–491 (N.D.Cal.1961).

### B. *Liens claimed by Stevedores.*

Two stevedores, who performed stevedoring services on vessels operated under charter by the debtor, claim liens for amounts due for such services on subfreights due to the debtor by shippers.

Under appropriate circumstances a stevedore may be entitled to a lien for such services on the vessel and on subfreights earned by the vessel. The Surico, 42 F.2d 935 (W.D.Wash.1930); In re Atlantic, Gulf & Pacific S.S. Co., 3 F.2d 309 (D.Md.1923). Such liens, previously granted under general maritime law, were made statutory by the Ship Mortgage Act of 1920 (46 U.S.C.A. §§ 971–973). The Little Charley, 31 F.2d 120 (D.Md.1929); United States v. Certain Subfreights Due Steamship Neponset, 300 F. 981 (D.Mass.1924); The Henry S. Grove, 285 F. 60 (W.D.Wash. 1922). See, also, Gilmore & Black, The Law of Admiralty (1957), p. 516.

The stevedore may not have a lien on earned subfreights unless he has a lien on the vessel. United States v. Robins Dry Dock & Repair Co., 13 F.2d 808 (1 Cir. 1926); Marine Chartering Co., Inc. v. Schirmer Stevedoring Company, Ltd., supra. Each of the charters under which the debtor operated its vessels contained the following standard clause (Clause 18):

> "Charterers will not suffer nor permit to be continued any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the owners in the vessel."

The Ship Mortgage Act provides that a lien on the vessel shall not be conferred where a party furnishing necessaries "by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party * * * the person ordering the * * * necessaries was without authority to bind the vessel therefor." (46 U.S.C.A. § 973.)

Clause 18 of the debtor's charters is a term of the charter party which denies to the debtor authority to bind the vessel for necessaries. United States v. Carver, 260 U.S. 482, 43 S.Ct. 181, 67 L.Ed. 361 (1923); Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co. of California, 310 U.S. 268, 275, 60 S.Ct. 937, 84 L.Ed. 1197 (1940); Diaz v. The S.S. Seathunder, 191 F.Supp. 807 (D.Md.1961). The stevedore is one of the "furnishers" of "necessaries" to which 46 U.S.C.A. § 973 applies. The Little Charley, supra; United States v. Certain Subfreights Due Steamship Neponset, supra; The Henry S. Grove, supra.

Thus, no lien on the vessel is conferred on the stevedore if he "knew, or by exercise of reasonable diligence could have ascertained" that the charter parties of the vessels contained Clause 18.

The stevedore or other "furnisher" is required to exercise reasonable diligence to determine whether the vessel is under charter and, if so, what the charter provides with respect to authority to bind the vessel. United States v. Carver, supra.

In the case at bar no claim was made by the stevedore claimants that they had exercised such reasonable diligence and no proof was offered or adduced on that subject. Clearly these stevedores could have learned of this standard charter clause if they had been reasonably diligent.

Thus, the stevedores are not entitled to a lien on the vessels and consequently they have no lien on subfreights which the vessels earned. The liens which they claim are of no force and effect as against the trustee.

One of the stevedore claimants has attempted to enforce its claims for services rendered to vessels operated by the debtor by attaching subfreights due from shippers under writ of foreign attachment in a suit in admiralty against the debtor. Such attachments were levied within four months prior to the filing of the petition and, as I have pointed out, at a time when the debtor was insolvent. The lien of such attachments was obtain-

ed solely by legal process and has no independent basis in maritime law. The attachments are plainly void as against the trustee under § 67, sub. a of the Bankruptcy Act. They add nothing to the claims of lien by the stevedores which I have held to be without merit.

## II.
### The scope of the maritime liens held to be valid.

*A. Claims for unpaid installments of charter hire.*

(1)

Charter hire was due semi-monthly in advance on each of the charter parties involved here. Most of the vessels chartered by the debtor were turned back to the shipowner by the debtor before the expiration of the charter and prior to the filing of the petition on May 23, 1958. In almost all such instances the debtor had already defaulted on the semi-monthly installments of charter hire payable on the due date immediately preceding the date on which the vessel was returned.

The trustee contends that, where the vessel was turned back to the shipowner after a semi-monthly installment of charter hire became due, the shipowner's lien should be limited to the proportion of the installment covering the period during which the vessel was in the debtor's possession. The shipowners, on the other hand, contend that their liens include the full amount of the unpaid installment for the semi-monthly period whether or not the vessel was turned back to them before the end of the period.

In support of his contention the trustee relies on Jebsen v. A. Cargo of Hemp, 228 F. 143 (D.Mass.1915) and Wehner v. Dene Shipping Co. (1905) 2 K.B. 92, and urges that these cases require proration here.

I do not agree. In the cases cited by the trustee, vessels were withdrawn from the charterer by the *owner* after the charterer's default. Since the owner had availed himself of the option in the charter to withdraw after the charterer's default, it was held that there was failure of consideration for that portion of the amount due which covered the period after the option to withdraw had been exercised.

In the case at bar, however, the shipowners did not exercise an option to withdraw after default. On the contrary, the vessels were "turned back" to the owners by the voluntary act of the debtor in violation of the terms of the charters.

Clause 18 of each charter gives a lien for "any amounts due" under it. The lien covers all installments actually due at the time the vessels were turned back. While a maritime lien will not be extended by construction, analogy or inference (Osaka Shosen Kaisha v. Pacific Export Lumber Company, 260 U.S. 490, 43 S.Ct. 172, 67 L.Ed. 364 (1923)) it by no means follows that a charterer will be permitted by his own breach of the charter party to reduce the shipowner's lien for sums actually past due under the charter.

The debtor, as charterer, was under a duty to keep the vessel and pay the charter hire to the end of the term. Britain S.S. Co., Limited v. Munson S.S. Line, 31 F.2d 530, 532 (2 Cir.1929), cert. den. 280 U.S. 574, 50 S.Ct. 29, 74 L.Ed. 625 (1929); Trechmann S.S. Co., Limited v. Munson S.S. Line, 203 F. 692 (2 Cir. 1913); William H. Beard Dredging Co. v. Hughes, 121 F. 808 (2 Cir. 1903). The turnback of the vessel by the debtor was a breach of that obligation and cannot result in a reduction of the sum which had already become due under the charter or of the lien given to owner for such sum.

Thus, where the vessel was turned back to the owner by the debtor prior to the filing of the petition the shipowner's lien includes the full amount of all installments of charter hire then due and unpaid.

(2)

In some instances the semi-monthly installment of charter hire became due before the filing of the petition on May 23, 1958 and the vessel was

turned back by the debtor in possession after the petition was filed but before the end of the installment period.

In these instances the trustee urges that, after the filing of the petition, the vessels which continued to be operated by the debtor in possession were in the custody of the Bankruptcy Court; that, subsequent to filing, the estate was liable only for the reasonable value of the use of the vessel by the debtor in possession; and that the shipowner's lien therefore cannot extend either to sums payable for the period after the filing while the vessel was operated by the debtor in possession for the estate's benefit, or for the period after the vessel was turned back by the debtor in possession.

But operation of the vessel by the debtor in possession for the benefit of the estate after the filing of the petition was subject to such liens against subfreights as were then valid and subsisting, Zartman v. First National Bank of Waterloo, 216 U.S. 134, 30 S.Ct. 368, 54 L.Ed. 418 (1910); Hewit v. Berlin Machine Works, 194 U.S. 296, 24 S.Ct. 690, 48 L.Ed. 986 (1904); Lockhart v. Garden City Bank & Trust Co., supra; In re Alikasovich, 275 F.2d 454 (6 Cir. 1960), aff'd 364 U.S. 603, 81 S.Ct. 347, 5 L.Ed.2d 323. The shipowner's lien attached to subfreights earned when the cargo was loaded (in re Bauer Steamship Company, supra) and covered all sums due under the charter as of the date the petition was filed. The last installment prior to filing was already due and payable when filing occurred and is not subject to reduction by subsequent events.

The shipowner's lien for the full installment of charter hire which fell due prior to the filing of the petition is not reduced as the trustee contends.

(3)

In a few instances installments of charter hire became due subsequent to the filing of the petition while the debtor in possession was operating the vessel for the benefit of the estate. In these instances the vessels were later turned back to the owners by the debtor in possession or the trustee and the charters were not assumed by the estate.

The trustee contends that the shipowner has no lien on subfreights for such installments.

The charters of these vessels were executory contracts of the debtor rejected by the estate when the vessels were turned back to the owners. Such rejection related back to the date of the filing of the petition and no new liabilities under the charter contracts enforceable against the estate arose subsequent thereto. In re North Atlantic & Gulf Steamship Company, 166 F.Supp. 29 (S.D.N.Y.1958), aff'd sub nom. 120 Wall Associates v. Schilling, 266 F.2d 548 (2 Cir. 1959). Under such circumstances the owners' only recourse is for the reasonable value of the use of the vessels by the representatives of the estate for its benefit which is treated as an expense of administration. See In re North Atlantic & Gulf Steamship Company, supra, and cases there cited. See, also, In re American Anthracite & Bituminous Coal Corp., 171 F.Supp. 377 (S.D.N.Y. 1959), aff'd sub nom. American Anthracite & Bituminous Coal Corp. v. Leonardo Arrivabene, S. A., 280 F.2d 119 (2 Cir. 1960).

Such sums as were due for the reasonable value of the use for the estate's benefit did not become due under the charter but by operation of law under the Bankruptcy Act. These sums, as expenses of administration, are entitled to priority of payment under § 64, sub. a of the Bankruptcy Act, 11 U.S.C.A. § 104. The priority so granted is designed to protect the shipowner from inequitable loss while his property is being used for the estate's benefit. This is the only recovery to which he is entitled for the use of his property during that period. He is not entitled to charter hire as such during the period, nor may he have a lien therefor.

Thus the shipowners' liens on subfreights earned do not extend to installments of charter hire which would have become due after May 23, 1958 but for the filing of the petition which placed

the vessels in the custody of the Bankruptcy Court.

### B. Deductions claimed by trustee for amounts due from owner to charterer.

#### (1)

#### Advances by charterer for ordinary disbursements

During the course of the voyages of the vessels chartered by the debtor the debtor advanced sums for the ordinary disbursements of the vessels.

The second paragraph of Clause 5 of the various charter parties provides:

"Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain, by the Charterers or their Agents, subject to 2½% commission and such advances shall be deducted from the hire."

Thus the amounts advanced by the charterer for ordinary disbursements were to be deducted from the charter hire and as to this there is no dispute.

However, there is controversy as to whether disbursements advanced should be deducted from the total amount of hire due under the charter at the time the lien on subfreights was asserted, as the shipowners contend, or should be deducted from the amount of the subfreights against which the lien is claimed, as the trustee contends.

The trustee's contention ignores the plain language of Clause 5.

The Clause specifically provides that "advances shall be deducted from the hire." Under Clause 18 the owner is given a lien on all cargoes and subfreights for any amounts due under the charter. The amount due for charter at any given time must be determined by deducting the charterer's advances for ordinary disbursements from the amount of charter hire then unpaid. The net amount represents the charter hire actually due.

There is nothing either in Clause 5 or Clause 18 which expressly or by implication requires or permits the charterer to apply his deduction for advances against the amount of subfreights due against which a lien is claimed rather than against the total amount of unpaid charter hire. There is no more justification for such a deduction than there would be for permitting an owner to have a lien for full unpaid charter hire without deduction of the charterer's advances. Amounts advanced for ordinary disbursements must therefore be deducted from the total amount of hire due rather than from the amount for which a lien on subfreights has been asserted.

#### (2)

#### Fuel aboard on turnback of vessel to owner.

Fuel aboard the vessel at the time of her turnback to the owner concededly belonged to the debtor-charterer. Clause 3 of the charters provides that "the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on board the vessel at the current prices."

The owners do not deny that they are obligated for the amounts due under Clause 3. They contend, however, that they are entitled to apply the amounts so owing both against any sums due them from the charterer at the time the vessels were turned back and against any sums coming due thereafter from the charterer whether under the charter party or as damages for its breach. In essence, they claim that they are entitled to credit the amounts owing for fuel against whatever general unsecured claims they may have against the debtor's estate arising in any way out of the charter party of the vessel.

The trustee, on the other hand, seeks to compel the owners to apply the sums owing for fuel aboard solely against the amounts of their liens for charter hire on subfreights earned by the vessel. The trustee proceeds on the theory that the charterer is entitled to a lien on the vessel for the amount due from the owner for fuel aboard and that therefore the charterer's lien must be set off against the owner's lien. He also urges that

where the vessel was turned back to the owner after the petition was filed the trustee had become vested with the debtor's property in the fuel and that therefore the owner was obligated to pay the trustee in full for this asset of the estate.

The trustee's first contention has no merit. There is no provision in the charter which gives the charterer a lien on the vessel for the fuel aboard on turnback to the owner. Nor has the trustee pointed to any authority to sustain his view. Indeed, Clause 18 of the charter specifically forbids any liens on the vessel except those expressly provided for in the agreement.

■ Thus the sums owing from the various shipowners to the debtor for fuel on board vessels turned back to the owners prior to the filing of the petition are simple contract obligations which, pursuant to § 68 of the Bankruptcy Act (11 U.S.C.A. § 108), may be set off against any mutual obligations owing from the debtor to the shipowner.

The purpose of § 68 is "to make it unnecessary for a creditor to pay the bankrupt estate the full value of a claim he owes the bankrupt, while at the same time being allowed only partial satisfaction of a claim due him from the estate." United States v. Brunner, 282 F.2d 535, 537 (10 Cir. 1960).

To require a shipowner to set off these obligations solely against the debts for which he has security rather than against the debts owed to him generally would therefore defeat the purposes of § 68.

The sums due from shipowners for fuel aboard vessels turned back prior to the filing of the petition may therefore be set off against whatever general unsecured claims the shipowners may have against the debtor, including any claims for damages for breach of the charters. While such damages were unliquidated at the time of the turnbacks, and even at the date of the filing of the petition, they were capable of liquidation or reasonable estimation without imposing undue delay upon the administration of the estate. In this posture they are properly subject to setoff. United States v. Brunner, supra; Howard Johnson, Inc. of Florida v. Tucker, 157 F.2d 959 (5 Cir. 1946).

The trustee's second contention, however, is on a different footing.

A distinction must be made between fuel aboard a vessel turned back before the petition was filed and fuel aboard a vessel turned back after the filing. In the first case the shipowner's obligation to pay for the fuel was to the debtor. The obligation arose under the charter between the parties and clearly was in existence prior to the filing of the petition. There was mutuality between the owner's obligation to pay for fuel aboard and the obligations then owing from the debtor to the owner. Section 68, therefore, is applicable as I have pointed out above.

■ However, where the vessel was not turned back until after the filing of the petition, plainly no obligation to pay for fuel aboard existed at the time of the filing. The shipowner at that time owed the debtor nothing. There were therefore no mutual debts or mutual credits in existence at that date which arose from an obligation to pay for fuel aboard.

Under § 68 mutuality must exist when the petition is filed in order for the doctrine of setoff to be applied in favor of a claimant. Desser, Rau & Hoffman v. Goggin, 240 F.2d 84 (9 Cir. 1957), cert. den. 355 U.S. 813, 78 S.Ct. 12, 2 L.Ed.2d 30 (1957); McDaniel Nat. Bank v. Bridwell, 74 F.2d 331 (8 Cir. 1934); Avant v. United States, 165 F.Supp. 802 (E.D. Va.1958). When one obligation arises prior to the filing, and the other subsequent thereto, the requisite mutuality is lacking and setoff in favor of a claimant is not appropriate under § 68. Matter of Techcraft, Inc., 177 F.Supp. 790, 792 (S.D.N.Y.1959); Avant v. United States, supra.

This then is the situation here. The shipowner is not entitled to set off the sums due for fuel aboard vessels turned back subsequent to the filing of the peti-

tion against obligations owing to it by the debtor at the time of filing.

The trustee's title to the debtor's assets relates back to the date of filing the petition. As of that date the fuel aboard was an asset of the debtor which was a part of its estate. Title to that asset passed to the trustee as of the date of filing.

The transfer of fuel aboard when the vessel was turned back to the owner subsequent to the filing was a transfer of an asset of the estate to which the trustee had title. The owner's obligation to pay therefor at reasonable value ran to the trustee and not to the debtor.

While the measure of reasonable value may be the current market price referred to in the charter, this does not change the nature of the shipowner's obligation which remains an obligation to pay the trustee for assets of the estate acquired from him. Such an obligation must be paid in full.

However, while the shipowner is not entitled to set off his general claims against the amount due to the trustee the converse does not apply to the trustee. For the trustee is entitled, under § 68, to set off sums payable to him by the claimant against any obligations running from the debtor or his estate to the claimant. 4 Collier on Bankruptcy (14th Ed.) ¶ 68.13 and cases there cited. Thus the trustee may set off the sums due from the shipowner for fuel aboard a particular vessel against the liens claimed on subfreights earned by that vessel.

The foregoing discussion, as I have indicated earlier, is intended to determine the principles to be applied in the variety of factual situations presented in this proceeding. These determinations will enable the parties to work out between themselves the appropriate figures applicable to each of the various lien claims and each of the vessels involved for inclusion in the decree to be entered on this opinion.

When this has been accomplished the decree may be settled on five (5) days' notice.