**UNITED STATES of America,**
Appellant,

v.

**Thomas R. BRUNNER, Trustee in Bankruptcy, Appellee.**

**In the matter of Eugene L. BROWN and Maxine E. Brown, husband and wife, doing business as Lockjoint Wood Products, Bankrupt.**

No. 6282.

United States Court of Appeals
Tenth Circuit.

Sept. 3, 1960.

Kathryn H. Baldwin, Attorney, Dept. of Justice, Washington, D. C. (George Cochran Doub, Asst. Atty. Gen., Wilbur G. Leonard, U. S. Atty., Topeka, Kan., and Morton Hollander, Attorney, Dept. of Justice, Washington, D. C., on the brief), for appellant.

Fred Hinkle, Wichita, Kan., for appellee.

Before BRATTON, PICKETT and LEWIS, Circuit Judges.

PICKETT, Circuit Judge.

This appeal raises the question of whether the United States is entitled to set off in a bankruptcy proceeding an amount it owes the bankrupts on an executory contract against its claim for damages arising out of the bankrupts' failure to complete that contract.

The bankrupts' claim arose from their partial performance of a written contract with the Army Engineer Corps, and the claim of the United States is based on a breach of that same contract, occasioned by the filing of a voluntary bankruptcy petition. The contract in question required the bankrupts, Eugene L. Brown and his wife, to manufacture 128,200 small wooden boxes and deliver them to the United States Army Chemical Arsenal in Arkansas at a price of 42¢ each. The contract provided that not less than 10% of the total number of boxes was to be delivered on or before June 2, 1958, with additional 10% shipments to follow at 15-day intervals, and complete delivery was to be made not later than October 15, 1958. Under a default clause the United States could terminate the contract if the Browns failed to make delivery of the boxes within the specified times. Upon termination, it could purchase the boxes elsewhere and the contractors would be liable to the United States for the excess cost of repurchase.[1] On June 25, 1958, the Browns filed a voluntary petition in bankruptcy and were duly adjudicated

---

1. The default provision of the contract reads, in part:

"Default: (a) The Government may, subject to the provisions of paragraph (b) below, by written Notice of Default to the Contractor terminate the whole or any part of this contract in any one of the following circumstances: * * *

(i) if the Contractor fails to make delivery of the supplies or to perform the services within the time specified herein or any extension thereof; or * * *

(c) In the event the Government terminates this contract in whole or in part as provided in paragraph (a) of this clause, the Government may procure, upon such terms and in such manner as the Contracting Officer may deem appropriate, supplies or services similar to those so terminated, and the Contractor

bankrupts on June 30, 1958. On the date of the filing of the petition in bankruptcy, there was due to the Browns the sum of $3,966.60. By letter dated June 27, 1958, the bankrupts were notified that "In view of the bankruptcy proceedings, you are hereby given Notice of Default in accordance with * * * your contract and your right to proceed with performance * * * is hereby terminated * * *." Thereafter the United States filed a preliminary proof of claim in an amount representing the cost in excess of the contract price of purchasing the undelivered boxes from another source, less the $3,966.60 due the bankrupts. Twenty days later the referee, on petition of the trustee, ordered the United States to show cause why the $3,966.60 should not be paid. The answer to this petition admitted that the sum was due the bankrupts and asserted the right to set it off against its larger claim for breach of contract and to recover the balance as a claim having priority by reason of 11 U.S.C. A. § 104, sub. a and 31 U.S.C.A. § 191. The referee held that on the date of the filing of the petition in bankruptcy, the United States had no provable claim against which there could be a set-off and the trustee was entitled to the payment of the sum due. The claim without the set-off was allowed in full as a common claim against the bankruptcy estate. Upon petition for review, the District Court adopted the findings and conclusions of law of the referee and affirmed his action.

▆ Provision for set-off of mutual debts of a bankrupt and his creditors is found in 11 U.S.C.A. § 108, which reads:

"a. In all cases of mutual debts or mutual credits between the estate of a bankrupt and a creditor the ac-

count shall be stated and one debt shall be set off against the other, and the balance only shall be allowed or paid.

"b. A set-off or counterclaim shall not be allowed in favor of any debtor of the bankrupt which (1) is not provable against the estate and allowable under subdivision g of Section 93 of this title; or (2) was purchased by or transferred to him after the filing of the petition or within four months before such filing, with a view to such use and with knowledge or notice that such bankrupt was insolvent or had committed an act of bankruptcy * * ."

The purpose of this section is to make it unnecessary for a creditor to pay the bankruptcy estate the full value of a claim he owes the bankrupt, while at the same time being allowed only partial satisfaction of a claim due him from the estate.[2]

The issue resolves itself into whether the United States had a provable claim on the date of the filing of the petition in bankruptcy against which there could be an effective set-off. In allowing the claim, the referee recognized that there was an anticipatory breach of the contract caused by the filing of the petition in bankruptcy, from which damages resulted to the United States, but denied the right to set off the amount which was owed the bankrupts on the same contract. It was reasoned that under the circumstances, the United States had no claim until it had exercised its right under the provisions of the contract to purchase the boxes elsewhere, and since this purchase was not made until sometime after bankruptcy, there was no claim in existence or provable at the time of the filing of the petition in bankruptcy. We think this holding is contrary to the provisions of the Bankrupt-

shall be liable to the Government for any excess costs for such similar supplies or services, provided, that the Contractor shall continue the performance of this contract to the extent not terminated under the provisions of this clause."

2. See Studley v. Boylston Nat. Bank, 229 U.S. 523, 33 S.Ct. 806, 57 L.Ed. 1313; Prudential Ins. Co. of America v. Nelson, 6 Cir., 101 F.2d 441; In re Progressive Wallpaper Corp., D.C.N.D.N.Y., 240 F. 807; Collier on Bankruptcy, 14 Ed., Vol. 4, § 68.02.

538

cy Act. Section 103, sub. a(9) permits debts of the bankrupt to be proved and allowed against his estate which are founded upon "claims for anticipatory breach of contracts, executory in whole or in part, * * * ." Section 108 contemplates that mutual debts or mutual credits between the estate of a bankrupt and a creditor shall be set off one against the other and the balance only shall be allowed or paid. It is the right which one party has to use his claim against another in full or partial satisfaction of what he owes to the other. If this is not accomplished by the parties, then "under the command of the statute, it must be done by the trustee." Studley v. Boylston Nat. Bank, 229 U.S. 523, 33 S.Ct. 806, 808. The claims of the creditors referred to are those which are provable. The only limitation upon the proof and allowance of unliquidated or contingent claims is that if the court determines that it is not capable of liquidation or of reaonable estimation, or that such liquidation or estimation will unduly delay the administration of the estate, it shall not be allowed. No contention is

made that the claim was disallowed for any other reason than that it was not provable at the time of the filing of the petition in bankruptcy.

Anticipatory breach of contract having been expressly made the basis for a provable claim against the bankruptcy estate, Collier on Bankruptcy, 14 Ed. Vol. 4, § 68.10 points out that "The right of set-off may be asserted in the bankruptcy proceedings even though at the time the petition is filed one of the debts involved is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated. Nor is it necessary that the debts sought to be set off be due at the date of adjudication. Such claims are provable; but in the case of an unliquidated claim, liquidation must be accomplished within the terms of section 57d [11 U.S.C.A. 93(d)]. or it is not deemed provable. * * * "

The Supreme Court has held that the initiation of bankruptcy proceedings is an anticipatory breach constituting the basis for a provable claim.[3]

3. City Bank Farmers Trust Co. v. Irving Trust Co., 299 U.S. 433, 57 S.Ct. 292, 81 L.Ed. 324. In discussing the right to prove a claim for the breach of an executory contract after bankruptcy, the court, in Central Trust Co. of Illinois v. Chicago Auditorium Ass'n, 240 U.S. 581, 592, 36 S.Ct. 412, 415, 60 L.Ed. 811, said:

"The claim for damages by reason of such a breach is 'founded upon a contract, express or implied,' within the meaning of § 63a–4, and the damages may be liquidated under § 63b. [Frederic L.] Grant Shoe Co. v. [W. M.] Laird [Co.], 212 U.S. 445, 448 [29 S.Ct. 332, 53 L.Ed. 591, 593]. It is true that in Zavelo v. Reeves, 227 U.S. 625, 631 [33 S.Ct. 365, 57 L.Ed. 676, 678] we held that the debts provable under § 63a–4 include only such as existed at the time of the filing of the petition. But we agree with what was said in Ex parte Pollard, 2 Low. 411, Fed.Cas.No.11,252, that it would be 'an unnecessary and false nicety' to hold that because it was the act of filing the petition that wrought the breach, therefore there was no breach at the time of the petition. And as was also declared in In re Pettingill [& Co., D.C.], 137 F.R. 143, 147: 'The test of provabili-

ty under the Act of 1898 may be stated thus: If the bankrupt, at the time of bankruptcy, by disenabling himself from performing the contract in question, and by repudiating its obligation, could give the proving creditor the right to maintain at once a suit in which damages could be assessed at law or in equity, then the creditor can prove in bankruptcy on the ground that the bankruptcy is the equivalent of disenablement and repudiation. For the assessment of damages proceedings may be directed by the court under § 63b (30 Stat. 562).' It was in effect so ruled by this court in Lesser v. Gray, 236 U.S. 70, 75 [35 S.Ct. 227, 59 L.Ed. 471, 475], where it was said: 'If, as both the bankruptcy and state courts concluded, the contract was terminated by the involuntary bankruptcy proceedings, no legal injury resulted. If, on the other hand, that view of the law was erroneous, then there was a breach and defendant Gray became liable for any resulting damage; but he was released therefrom by his discharge.' Of course, he could not be released unless the debt was provable.

"We therefore conclude that the Circuit Court of Appeals was correct in

And in a bankruptcy case arising in Kansas, this court recognized the general rule that bankruptcy is an anticipatory breach of an executory contract.[4] The liability existed at the time of the breach, the amount of which was ascertained and determined at a later date and allowed by the trustee.[5] We therefore hold that the United States had a provable claim at the time of the filing of the petition in bankruptcy against which it could set off the debt which it owed the bankrupt.

The order is reversed and the matter is remanded with instructions that the set-off be allowed and the United States given the statutory priority for the balance of its claim.

holding that the intervention of bankruptcy constituted such a breach of the contract in question as entitled the Auditorium Association to prove its claim." Annotation 54 A.L.R.2d 1090.

4. Continental Motors Corp. v. Morris, 10 Cir., 169 F.2d 315. We find no Kansas decisions holding that filing of a petition in bankruptcy is not an anticipatory breach of an executory contract under Kansas law. See Mabery v. Western Casualty & Surety Co., 173 Kan. 586, 250 P.2d 824.

5. In Luther v. United States, 10 Cir., 225 F.2d 495, 498, we said: "At the intervention of bankruptcy, no claim for refund of the overpayments of income tax had been filed, and no determination had been made in respect to the existence of such overpayments or amounts thereof. But the overpayments had been made and the liability therefor existed. The amount of such liability was not ascertained and determined until later. But it existed in an undetermined amount at the time of the filing of the petition in bankruptcy. And the mere fact that the amount of the liability was not determined until after the intervention of bankruptcy does not deprive the Government of the right of setoff if it otherwise would have existed."