Charles M. TATELBAUM Assignee for the Benefit of the CREDITORS of A. HOEN & CO., INC.

v.

The UNITED STATES.

No. 29–85C.

United States Claims Court.

July 10, 1986.

Alan M. Grochal, Baltimore, Md., attorney of record for plaintiff; Thomas C. Wheeler, of counsel.

David B. Stinson, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant.

## OPINION

YOCK, Judge.

This contract case involves an appeal from a decision of the Government Printing Office ("GPO"), Board of Contract Appeals (hereinafter the Board)[1] sustaining the Government Printing Office's setoff of

---

1. Panel 9–82 (October 21, 1983).

amounts owed by the insolvent contractor to GPO on two defaulted contracts against amounts which GPO owed the debtor on two unrelated contracts. On cross-motions for summary judgment, the parties seek review of the Board's decision in accordance with the standards of the Wunderlich Act, 41 U.S.C. §§ 321, 322 (1982).

For reasons outlined herein, the Board's decision is affirmed.

### Facts

Plaintiff Charles M. Tatelbaum is Assignee for the Benefit of the Creditors of A. Hoen & Company, Inc. ("Hoen"), an insolvent Maryland corporation. The GPO awarded Hoen five contracts during 1979 and 1980, four of which are relevant here. In all of these contracts, GPO reserved the right to assess Hoen for any excess costs of reprocurement in the event of Hoen's termination for default.

Hoen had completed work on two of the contracts and had partially completed work on the other two when it ceased its business operations on April 10, 1981. Five days later, Hoen executed an assignment for the benefit of its creditors, and on April 16, 1981, the Circuit Court of Baltimore City declared Hoen insolvent and assumed jurisdiction over the Hoen estate, appointing plaintiff Charles M. Tatelbaum and Edward F. Shea, Jr., as assignees.[2]

In accordance with the Default Clause of each contract, and upon learning that Hoen had ceased business operations, GPO terminated Hoen's contracts identified as Programs B 312–S, B 321–S, and B 365–M, for default, due to Hoen's inability to complete performance. GPO notified Hoen of its termination for default by letter dated April 15, 1981. The letter also informed Hoen that, pursuant to contract provision, the company would be responsible for any excess costs that arose due to reprocurement on these contracts because of the default.

---

2. Edward F. Shea, Jr., subsequently resigned leaving Charles M. Tatelbaum as the remaining assignee.

Of the four contracts at issue, two (B 315–S and B–365–M) had been completed by the termination date and the GPO then owed Hoen some $24,393.31 and $9,637.48, respectively, on the contracts. Of the two partially completed contracts (B 312–S and B 321–S), GPO then owed Hoen some $53,-304.57 and $11,125.09 respectively.

On April 1, 1982, the GPO assessed against Hoen $122,702.38 in excess reprocurement costs relating to contracts B 312–S and B 321–S. The GPO assessed $77,061.86 in reprocurement costs against the B 312–S contract, and $45,640.52 against the B 321–S contract. GPO did not assess any reprocurement costs against contract B 365–M. Hoen was advised that GPO was setting off these costs against $98,460.45 due and owing Hoen for performance under all four contracts.

Plaintiff sought review of the setoff with the contracting officer, which was denied on September 20, 1982. Subsequently, the plaintiff appealed the contracting officer's decision to the GPO Board of Contract Appeals, arguing that the GPO could not set off against monies due and owing Hoen under Programs B 315–S and B 365–M debts arising from Programs B 312–S and B 321–S. Plaintiff conceded that GPO could recoup reprocurement costs of each defaulted contract from amounts that the company was owed on each defaulted contract, but argued that it was improper for GPO to extend this setoff right to separate, completed contracts that were not in default. Plaintiff claimed it was owed $34,-030.79 under Programs B 315–S and B 365–M, the two contracts that had been completed and that were not in default.

Plaintiff's complaint, filed February 14, 1985, seeks this Court's review of the October 21, 1983, decision of the Board which denied plaintiff's claim. Plaintiff initially sought to obtain review of the Board's decision before the United States Court of Appeals for the Federal Circuit. By decision dated December 11, 1984, *Tatelbaum v. United States*, 749 F.2d 729 (Fed.Cir. 1984), the United States Court of Appeals for the Federal Circuit ruled that, since the GPO was not part of the Executive Branch, the Contract Disputes Act of 1978, 41 U.S.C. § 601 *et seq.* (1982), did not apply to decisions by the GPO Board of Contract Appeals, and that the court of appeals, therefore, lacked jurisdiction over Mr. Tatelbaum's attempted appeal. The case was ordered transferred to this Court. Mr. Tatelbaum's complaint invokes the jurisdiction of this Court pursuant to 28 U.S.C. § 1491 and the Wunderlich Act, 41 U.S.C. §§ 321–22. Both parties have filed motions for summary judgment.

### Discussion

It is the duty of this Court, in reviewing a decision under the standards of the Wunderlich Act, to determine whether the Board's findings of fact and conclusions of law are supported by substantial evidence and are correct as a matter of law. *Dravo Corp. v. United States*, 219 Ct.Cl. 416, 423, 594 F.2d 842, 845 (1979); *Entwistle Co. v. United States*, 6 Cl.Ct. 281, 286 (1984).

Before responding to the plaintiff's contentions, it is important to point out that judicial review of administrative factual determinations under Wunderlich standards is narrow and limited. *Roflan Co. v. United States*, 7 Cl.Ct. 242, 248 (1985); *Iconco v. United States*, 6 Cl.Ct. 149, 151 (1984), *aff'd mem.*, 770 F.2d 179 (Fed.Cir.1985); *Koppers Co. v. United States*, 186 Ct.Cl. 142, 148, 405 F.2d 554, 557 (1968). The Board's findings of fact are presumptively correct. *Arundel Corp. v. United States*, 207 Ct.Cl. 84, 99, 515 F.2d 1116, 1124 (1975). Plaintiff carries a heavy burden in seeking to set aside factual determinations made by a Board. *Donald M. Drake Co. v. United States*, 194 Ct.Cl. 549, 553, 439 F.2d 169, 171 (1971). Questions of law decided by the Board, on the other hand, are not binding on this Court nor entitled to finality. *Astro-Space Laboratories, Inc. v. United States*, 200 Ct.Cl. 282, 293, 470 F.2d 1003, 1008–09 (1972).

The plaintiff argues that the decision of the GPO Board of Contract Appeals is wrong as a matter of law. Specifically, the plaintiff states the issue in the case to be

whether the United States may recover reprocurement costs for contracts terminated for default from an insolvent contractor by offsetting those reprocurement costs from amounts due the contractor under unrelated contracts. The plaintiff does not contest the Government's right to set off the reprocurement costs of each defaulted contract from amounts that Hoen was owed on each defaulted contract, but it argues strenuously that the GPO may not extend its setoff rights to separate, completed contracts that were not in default. In this connection, plaintiff argues four subpoints: first, that state law and federal bankruptcy law preclude the United States from setting off plaintiff's obligations against those of the United States; second, that the prospective reprocurement costs were not sufficiently liquidated at the time of Hoen's assignment for the benefit of its creditors to allow a setoff; third, that the requisite mutuality between parties to a setoff is missing in this case; and fourth, that equitable considerations require this setoff to be restricted or eliminated altogether. Unfortunately for the plaintiff, however, this Court does not agree with any of its legal arguments, and, consequently, must affirm the Board's decision.

Generally, the Government has the right to set off any claim it has against a contractor through the withholding of funds that are otherwise payable to the contractor. This right is inherent in the United States and grounded in the common law right of every creditor to apply the monies of his debtor in his hands to the extinguishment of the amounts due him from the debtor. *Barry v. United States*, 229 U.S. 47, 33 S.Ct. 681, 57 L.Ed. 1060 (1913); *McKnight v. United States*, 801 to 179, 98 U.S. 179, 25 L.Ed. 115 (1878); *Gratiot v. United States*, 15 Pet. 336, 40 U.S. 336, 10 L.Ed. 759 (1841). Furthermore, the Government's right to set off a contractor's debts extends to monies owed as a result of separate and independent contract transactions. *United States v. Munsey Trust Co.*, 332 U.S. 234, 239–40, 67 S.Ct. 1599, 1601–02, 91 L.Ed. 2022 (1947); *Centron Corp. v. United States*, 218 Ct.Cl. 1,

7, 585 F.2d 982, 985 (1978); *Project Map, Inc. v. United States*, 203 Ct.Cl. 52, 54–55, 486 F.2d 1375, 1376 (1973); 59 Comp.Gen. 143 (1979); 2 Comp.Gen. 479 (1923).

### A. State or Federal Statutory Exceptions To The General Right Of Setoff

The plaintiff asserts that statutory exceptions preclude setoff in this case. Hoen is an insolvent Maryland company and its assets are under the jurisdiction of a state court that has appointed an assignee for the benefit of the company's creditors. The plaintiff argues that GPO, by withholding payments owed to Hoen for work completed on all four contracts in question, will receive a larger payment than other similarly situated creditors. This larger payment, plaintiff asserts, will result in a preferential transfer to the United States which should be set aside or avoided by the assignee under Maryland law. The plaintiff's argument fails, however, because state law is superseded by the rights of the Federal Government specifically established by federal law and federal court decisions. *Sola Electric Co. v. Jefferson Electric Co.*, 317 U.S. 173, 176, 63 S.Ct. 172, 173, 87 L.Ed. 165 (1942); *Keydata Corp. v. United States*, 205 Ct.Cl. 467, 482–83, 504 F.2d 1115, 1123–24 (1974); *United States v. Sommerville*, 324 F.2d 712, 714–15 (3d Cir. 1963), *cert. denied*, 376 U.S. 909, 84 S.Ct. 663, 11 L.Ed.2d 608 (1944).

■ The right of the United States to set off its debts against those of a creditor is firmly established in both case law and statutory authorization. *See United States v. Munsey Trust Co.*, 332 U.S. 234, 67 S.Ct. 1599, 91 L.Ed. 2022 (1947); *Project Map, Inc. v. United States*, 203 Ct.Cl. 52, 486 F.2d 1375 (1973); *United States v. Brunner*, 282 F.2d 535 (10th Cir.1960); 7 Comp.Gen. 576 (1928). *See also* 31 U.S.C. § 71 (1976) (current version at 31 U.S.C. § 3702 (1982)); 31 U.S.C. § 227 (1976) (current version at 31 U.S.C. § 3728 (1982)); 31 U.S.C. §§ 951–53 (1976) (current version at 31 U.S.C. §§ 3701, 3711, 3717, 3718 (1982)); and 28 U.S.C. § 1503 (1982). Hoen was

declared insolvent and its assets were assigned for the benefit of creditors under Maryland law. Federal bankruptcy law thus has no direct application here. Since the United States' authority to set off supersedes any state law that would impinge upon this right, GPO could set off reprocurement expenses due to Hoen's default upon two partially completed contracts as if the insolvency and assignment for the benefit for creditors had never taken place.

■ Under federal bankruptcy law, the United States' broad rights of setoff are not limited by insolvency. When a debtor is adjudged a bankrupt and a trustee is appointed to administer his estate, the estate assets pass to the trustee *subject to* the equitable right of setoff then existing. A debtor of the bankrupt may set off debts of the insolvent company rather than pay off what he owes and attempt to collect from the estate as a general creditor. 7 Comp.Gen. 576, 578 (1928). While Hoen did not file for bankruptcy, he did execute an assignment for the benefit of its creditors pursuant to applicable Maryland law. The plaintiff has noted the United States bankruptcy code has been largely incorporated into Maryland insolvency law. Thus, the analogy to federal bankruptcy law is appropriate and calls for the same result. Plaintiff has cited this Court to no state or federal law that would preclude the Government's general right to setoff under the factual circumstances herein present.

B. Liquidation of the United States' Claim For Reprocurement Costs

Next, the plaintiff argues that the Government's claim was not liquidated as of April 16, 1981, the date that the Maryland court asserted jurisdiction over the Hoen estate, because the excess costs for reprocurement were not ascertained until approximately one year later. Plaintiff asserts that since GPO's claims were unliquidated by April 16, 1985, GPO lost its ability to set them off against amounts owing at that time to Hoen for completed work on unrelated contracts.

■ The power of the United States to exercise its right to setoff, as noted earlier, supersedes any state insolvency procedure. GPO therefore did not have to liquidate its claim for procurement costs strictly by April 16, 1981 or lose its right to set them off.

It is an established rule that the United States has a provable claim against a bankrupt for the excess cost of reprocurement at the time the bankrupt files its petition for bankruptcy. *United States v. Brunner*, 282 F.2d 535 (10th Cir.1960). In *Brunner*, the United States terminated a manufacturing contract for "inability to perform" in view of the commencement of bankruptcy procedures by the contractor. Here, the United States terminated Hoen's contract for "inability to perform" by letter dated April 15, 1981. Hoen had ceased business operations on April 10, 1981, and executed its assignment for the benefit of its creditors some five days later.

In *Brunner*, the Court held that bankruptcy was an anticipatory breach of an executory contract and that liability for the resulting excess costs of reprocurement came into existence *at the time of the breach*. This liability accrued in spite of the fact that actual reprocurement did not take place until later and only then were the actual reprocurement amounts known. The bankruptcy in *Brunner* parallels the cessation of business operations and assignment for benefit of creditors in this case. Both constitute anticipatory breaches of contracts and in both cases the Government terminated for default due to the contractors obvious inability to finish performance. In both situations, breaches of contracts with the United States created liability for reprocurement costs at the time of the breach. Thus, the fact that the United States could not ascertain the exact amount of its claim for reprocurement costs from Hoen until later is and was irrevelant. Therefore, the plaintiff's liquidity argument fails.

C. Mutuality Of Parties

The plaintiff also argues that Government setoff is inappropriate under the cir-

cumstances present in this case because there is no mutuality of parties. Plaintiff asserts that GPO owed Hoen some $34,000 under the two unrelated contracts at the time of the insolvency. However, by the time GPO defaulted Hoen on the two partially completed contracts, Hoen had executed an assignment for the benefit of its creditors and had been declared insolvent by the Circuit Court for Baltimore City, which had named Mr. Tatelbaum as assignee of Hoen. Thus, according to the plaintiff, Mr. Tatelbaum is not the same party as Hoen, and, therefore, the requisite mutuality of parties is not present which might otherwise allow setoff on these various contract debts.

■ Unfortunately for the plaintiff, however, its argument is flawed. Maryland case law holds that an assignee takes an insolvent's property in the same condition and with the same burdens under which it was held by the insolvent. *See Dowler v. Cushwa*, 27 Md. 354, 367 (1867). Furthermore, applying federal bankruptcy standards, a trustee in bankruptcy takes property of the bankrupt subject to the identical equities and liens as the person or corporation out of whose possession it is taken. 7 Comp. Gen. 576, 578 (1928). Thus, the plaintiff's argument on mutuality fails. Mutuality of parties is present in this case.

### D. Equity Considerations

Finally, the plaintiff has asserted two equitable arguments that, in its view, should preclude the Government from its general right of setoff in this case.

■ The plaintiff first argues that GPO has unclean hands because it waited for some twelve months to pay the Government's debt that was due on the completed contracts in order to create the possibility of an offset. The simple answer to this argument, however, is that the GPO has the legal right to set off debts. There is nothing unclean about delaying a reasonable time until the extent of the mutual debts are known and fixed, in order to effect the legal right to setoff that it had. For the Government not to do so would

have been legally impermissible, under the statutes of the United States.

Next, the plaintiff contends that the Government should be estopped from its setoff here, because the GPO contract specialist handling the contracts at issue wrote the plaintiff a letter dated June 9, 1981, indicating that he would detain $75,000 of the funds due Hoen to cover any offset and that the balance would be paid shortly to the assignee. Since the contract specialist never paid the "balance" to Hoen in this case, the plaintiff believes that the Government should be estopped to now assert its right to setoff because the plaintiff relied on these assurances of payment.

■ Estoppel, however, would be inappropriate under these circumstances because no Government employee has the authority to act contrary to the law and the Government's best interests. *See Federal Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 68 S.Ct. 1, 92 L.Ed. 10 (1947). Furthermore, under the circumstances here present, the plaintiff could not have reasonably relied on the assurances given in the letter. Thus, plaintiff's equitable arguments also fail to persuade this Court.

In summary, there is no factual dispute here between the parties; the plaintiff concedes it is liable for the reprocurement costs on Contracts B 312–S and B 321–S in the amount of $122,782.38 and the defendant concedes it owes Hoen $98,460.45 for work completed. The only issue is the propriety of setting off against these reprocurement costs that portion of the money owed to Hoen applicable to work performed on contracts unrelated to those on which the company defaulted. The determination of this issue is a question of law. The GPO Board of Contract Appeals correctly determined that the United States could recover reprocurement costs for contracts terminated for default from an insolvent contractor by deducting these costs from amounts due the contractor under those unrelated contracts. The Board's decision is not arbitrary, capricious, is supported by substantial evidence, and is correct as a

matter of law. Consequently, this Court determines that the Board's decision should be affirmed.

## CONCLUSION

For the foregoing reasons, the defendant's motion for summary judgment is granted, the plaintiff's cross-motion for summary judgment is denied, and the Court will dismiss the petition. Each party will bear its own costs.