**AMOCO PRODUCTION COMPANY, et al., Appellants,**

v.

**Thomas A. FRY, Director, Minerals Management Service, et al., Appellees.**

**No. 96–5030.**

United States Court of Appeals, District of Columbia Circuit.

Argued Nov. 1, 1996.

Decided July 18, 1997.

L. Poe Leggette, Washington, DC, argued the cause and filed the briefs for appellants.

Robert L. Klarquist, Attorney, U.S. Department of Justice, Washington, DC, argued the cause for appellees. With him on the brief were Lois J. Schiffer, Assistant Attorney General, and David C. Shilton, Attorney.

Before: EDWARDS, Chief Judge, SILBERMAN and TATEL, Circuit Judges.

Opinion for the Court filed by Circuit Judge TATEL.

TATEL, Circuit Judge:

Appellants, companies holding federal leases for oil and gas production on the outer continental shelf, seek credits for hundreds of royalty overpayments made between 1990 and 1994. The Department of the Interior is withholding the overpayments pending resolution of its claims that the companies owe money from earlier royalty underpayments. The district court granted summary judgment for the Department, holding that neither the Outer Continental Shelf Lands Act nor the Debt Collection Act requires the Department to release the overpayments, and that because the companies have no constitutionally protected property interest in the overpayments, the Department's withholding does not violate the Due Process Clause. Concluding that temporary withholding is distinct from administrative offset and thus not subject to the Debt Collection Act, but that it does amount to a deprivation of a constitutionally protected property interest, we reverse and remand with instructions to ensure that the Department gives the companies the information needed to satisfy the requirements of due process.

I

Federal law divides the lands over which the federal government exercises mineral leasing authority into three broad classes: federal onshore lands, Indian lands, and outer continental shelf lands. *See, e.g.,* 30 U.S.C. §§ 1701(b), 1702(1), (3), (10) (1994); 5 Eugene Kuntz, Kuntz: A Treatise on the Law of Oil and Gas ch. 67 (1991). The Outer Continental Shelf Lands Act, 43 U.S.C. § 1331 *et seq.* (1994), authorizes the Secretary of the Interior to grant leases for oil and gas production on the outer continental shelf, *id.* § 1337, the submerged lands extending from three miles off the U.S. coast to the outer edge of the shelf, the point where the slope of the sea floor increases dramatically and "the continental mass drops off steeply toward the ocean deeps." H.R. Rep. No. 413, at 2 (1953), *reprinted in* 1953 U.S.C.C.A.N. 2177, 2178; *see* 43 U.S.C. § 1331(a). Appellants, six oil companies, hold many of these leases, which are overseen by the Interior Department's Minerals Management Service (MMS). Offshore lessees make monthly royalty payments to the Department. Under section 10 of the Act, lessees believing they have overpaid royalties have two years to request repayment. 43 U.S.C. § 1339(a). In response to timely requests, the Department determines whether overpayments have been made and, if so, certifies the amounts to the Treasury Department to allow repayment in the form of refunds or credits. *Id.* § 1339(a)-(b). The MMS requires lessees to await permission letters before taking credits for royalty overpayments, enforcing the system through $10,000/day fines on lessees taking credits without permission.

Beginning in December 1992 or January 1993, the MMS refused to issue permission letters for the companies that are appellants in this case to take credits for overpayments even though the companies had filed timely requests for credits and the agency had determined that the companies had in fact overpaid. As it explained at a July 1993 meeting with representatives of the companies, the MMS withheld the credits because the companies refused to pay amounts the MMS claimed they owed on earlier royalty underpayments. The MMS discovered the underpayments during an audit of lease accounts pursuant to the Federal Oil and Gas Royalty Management Act of 1982, 30 U.S.C. § 1701 *et seq.* (1994), which governs many aspects of the payment system for oil and gas leases on federal onshore, Indian, and outer continental shelf lands. *See id.* § 1711(c). The underpayments identified by the MMS related to leases the companies held on all three classes of land. By the end of March 1994, the withheld overpayments,

running as far back as 1990, amounted to approximately $12.4 million.

The companies refused to comply with the Department's orders to pay amounts owed on the underpayments and sued in several federal district courts, challenging some of the underpayment claims on the merits and asserting that all claims were barred by the six-year statute of limitations on contract claims brought by the United States. *See* 28 U.S.C. § 2415(a) (1994). Because the Government's ability to collect underpayments by administrative offset is not subject to the statute of limitations, the Department claims that it is withholding to preserve its ability to collect those underpayments that prove to be time-barred. The Government's position, confirmed at oral argument, is that it will cease withholding outer continental shelf overpayments if the companies waive their statute-of-limitations defenses to the Department's underpayment claims to the extent of their withheld outer continental shelf overpayments. *See* Defendants' Statement of Material Facts Not in Dispute, ¶ 19; *see also* 58 Fed.Reg. 43,582, 43,585 (Aug. 17, 1993). Declining the Government's offer, the companies filed suit in the United States District Court for the District of Columbia, claiming the Department's refusal to authorize credits for their 1990–1994 overpayments violated section 10 of the Outer Continental Shelf Lands Act; the Debt Collection Act, 31 U.S.C. § 3701 *et seq.* (1994), and its implementing regulations, the Federal Claims Collection Standards, 4 C.F.R. pts. 101–05 (1997); and the Due Process Clause, U.S. CONST. amend. V. They sought declaratory and injunctive relief and, in the alternative, a writ of mandamus.

■ The District Court granted the Department's motion for summary judgment, concluding that the Department's withholding did not violate section 10 because its right to withhold was implicit in its common-law right of offset, and section 10 could not be read to abrogate that right. Finding that the Department's withholding was not an offset, but rather a temporary withholding in preparation for possible future offset once the litigation about the companies' earlier underpayments had been resolved, the District Court concluded that the Debt Collection Act's provisions concerning administrative offset do not apply to the Department's withholding. Determining that the companies had no property right in the credits withheld by the Department, the District Court found no due process violation. We review the district court's grant of summary judgment *de novo*. *See, e.g., Association of Flight Attendants, AFL–CIO v. USAir, Inc.*, 24 F.3d 1432, 1436 (D.C.Cir.1994).

## II

■ Before turning to the merits of the companies' claims, we must determine whether events occurring during the pendency of this appeal have rendered the case moot. After the companies filed their notice of appeal and before the submission of briefs, Congress amended both the Debt Collection Act, Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub.L. No. 104–134, tit. III, ch. 10, § 31001, 110 Stat. 1321, 1321–361, and the Outer Continental Shelf Lands Act, Federal Oil and Gas Royalty Simplification and Fairness Act of 1996, Pub.L. No. 104–185, 110 Stat. 1700. The Outer Continental Shelf Lands Act amendments included a repeal of section 10. *Id.* § 8(b), 110 Stat. at 1717.

Although a statute's repeal normally renders moot a challenge to its validity, *see, e.g., United States Dep't of the Treasury v. Galioto*, 477 U.S. 556, 559–60, 106 S.Ct. 2683, 2685–86, 91 L.Ed.2d 459 (1986); *Kremens v. Bartley*, 431 U.S. 119, 128–29, 97 S.Ct. 1709, 1714–15, 52 L.Ed.2d 184 (1977), here the companies challenge not the validity of the statute itself, but government action under it, and Congress has made clear that it intends old section 10 to govern the lease payments at issue in this case. Section 8(b) of the Federal Oil and Gas Royalty Simplification and Fairness Act of 1996 provides, "Effective on the date of the enactment of this Act, section 10 of the Outer Continental Shelf Lands Act ... is repealed." Pub.L. No. 104–85, 110 Stat. at 1717. With certain exceptions not relevant here, section 11 provides that, "this Act, and the amendments made by this Act, shall apply with respect to the production of oil and gas after the first day

of the month following the date of enactment of this Act." *Id.* In its section-by-section analysis of the Simplification Act, the House Report explains:

> With respect to the repeal of section 10 of the Outer Continental Shelf Lands Act (OCSLA), the Committee intends the prospective elimination of the OCSLA imposed bar to lessees seeking refunds of overpayments more than two years later and the establishment of the same limitations period for OCS leases as for onshore Federal leases. Therefore, royalties which may have been overpaid for OCSLA lease production prior to enactment of this Act are not affected by this section.

H.R.REP. No. 104–667, at 21 (1996), *reprinted in* 1996 U.S.C.C.A.N. 1442, 1450–51. As to the Simplification Act's effective date, the report states: "The Committee does not intend the provisions of this Act to alter rights or obligations of the Secretary of the Interior for production occurring prior to the date of enactment, unless expressly noted otherwise in the Act." *Id.*

The statute's language and legislative history thus make clear that section 10's repeal concerns only new oil and gas production. Accordingly, section 10 continues to govern the royalty overpayments in this case, which were made based on oil and gas production that occurred long before enactment of the Simplification Act. As the Supreme Court has repeatedly affirmed concerning effective dates and applicability of statutory amendments, "where the congressional intent is clear, it governs." *Kaiser Aluminum & Chemical Corp. v. Bonjorno,* 494 U.S. 827, 837, 110 S.Ct. 1570, 1577, 108 L.Ed.2d 842 (1990); *see also Landgraf v. USI Film Products, Inc.,* 511 U.S. 244, 257, 264, 114 S.Ct. 1483, 1492–93, 1496, 128 L.Ed.2d 229 (1994).

### III

The central issue in this case is whether the Department of the Interior possesses legal authority to withhold refunds of or credits for the companies' overpayments. According to the Government, its power to withhold derives both from statute—section 10 of the Outer Continental Shelf Lands Act—and from the common law right of off-

set. Although rejecting the Government's statutory argument, we agree with it concerning the common law.

■ Section 10 provides in relevant part:

(a) Subject to the provisions of subsection (b) of this section, when it appears to the satisfaction of the Secretary that any person has made a payment to the United States in connection with any lease under this subchapter in excess of the amount he was lawfully required to pay, such excess *shall be repaid* without interest to such person or his legal representative, if a request for repayment of such excess is filed with the Secretary within two years after the making of the payment.... The Secretary *shall certify* the amounts of all such repayments to the Secretary of the Treasury, who is authorized *and directed* to make such repayments....

(b) No refund of or credit for such excess payment shall be made until after the expiration of thirty days from the date upon which a report giving the name of the person to whom the refund or credit is to be made, the amount of such refund or credit, and a summary of the facts upon which the determination of the Secretary was made is submitted to the ... Senate and ... House of Representatives.

43 U.S.C. § 1339 (emphasis added). Far from authorizing the withholding of refunds or credits for overpayments, section 10 affirmatively requires the granting of such refunds or credits once a lessee has filed a timely request, the Secretary has determined that the lessee made an overpayment, and Congress has had at least thirty days to review the Secretary's determination. The statute's repeated use of mandatory language makes this plain: overpayments "shall be repaid"; the Secretary of the Interior "shall certify" the overpayment amounts to the Treasury; the Secretary of the Treasury is "direct[ed]" to make the certified repayments. As in the district court, the Government concedes that with regard to the overpayments at issue in this case, each of section 10's three prerequisites for repayment was satisfied. *See* Defendants' Statement of Material Facts Not in Dispute ¶ 11; Plaintiffs'

Statement of Material Facts Not in Dispute ¶¶ 5–7; Defendants' Resp. to Plaintiffs' Statement of Material Facts Not in Dispute ¶¶ 5–7. Thus, under the plain language of the Outer Continental Shelf Lands Act, the companies were entitled to refunds or credits for their overpayments.

 The Government argues that the Department may nonetheless withhold the overpayments as an exercise of its common law right of offset or setoff, which "allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Md. v. Strumpf,* —— U.S. ——, ——, 116 S.Ct. 286, 289, 133 L.Ed.2d 258 (1995) (quoting *Studley v. Boylston Nat'l Bank,* 229 U.S. 523, 528, 33 S.Ct. 806, 808, 57 L.Ed. 1313 (1913)). Like private creditors, the federal government has long possessed the right of offset at common law. *See, e.g., United States v. Munsey Trust Co.,* 332 U.S. 234, 239, 108 Ct.Cl. 765, 67 S.Ct. 1599, 1601–02, 91 L.Ed. 2022 (1947); *Gratiot v. United States,* 40 U.S. 336, 370, 15 Pet. 336, 10 L.Ed. 759 (1841). Acknowledging the Government's offset right, the companies contend that the Debt Collection Act imposes procedural requirements on the exercise of the right that the Interior Department failed to follow. At the time of the events in dispute, that Act provided:

(a) After trying to collect a claim from a person under section 3711(a) of this title, the head of an ... agency may collect the claim by administrative offset .... only after giving the debtor—

(1) written notice of the type and amount of the claim, the intention of the head of the agency to collect the claim by administrative offset, and an explanation of the rights of the debtor under this section;

(2) an opportunity to inspect and copy the records of the agency related to the claim;

(3) an opportunity for a review within the agency of the decision of the agency related to the claim; and

(4) an opportunity to make a written agreement with the head of the agency to repay the amount of the claim.

The Act also provides:

(b) Before collecting a claim by administrative offset under subsection (a) of this section, the head of an ... agency must prescribe regulations on collecting administrative offset....

31 U.S.C. § 3716 (1994).

As the companies point out, at the time the Department began withholding the overpayments at issue in this case, it had not promulgated the regulations concerning administrative offset required by subsection 3716(b). Conceding this point, the Government argues that its failure to issue regulations has no effect on its right to withhold the contested payments for two reasons: the withholding in this case is only temporary and thus not an offset within the meaning of the Debt Collection Act; and the Act does not apply to the Government's common-law right of offset, but only to the statutory right of offset created by the Act itself. Because we agree with the District Court that the first of these reasons is dispositive concerning the Debt Collection Act's applicability, we need not address the second.

Our agreement with the District Court that the Government's temporary withholding of money sufficient to satisfy claims it is seeking to resolve through litigation but which may be time-barred does not constitute administrative offset rests first and foremost on the plain language of the Debt Collection Act. The Act defines "administrative offset" as "withholding money payable by the United States Government to, or held by the Government for, a person *to satisfy a debt* the person owes the Government." *Id.* § 3701(a)(1) (emphasis added). Offset thus occurs when the Government actually applies money it is holding to satisfy a debt. This view of offset fits with the Act's authorization of agencies to "*collect* ... claim[s] by administrative offset." *Id.* § 3716(a) (emphasis added). The temporary retention of the money during the time it takes to determine whether the debt may be collected through judicial action is distinct from the subsequent satisfaction of the debt.

Although we are unaware of any decision drawing the distinction between withholding and offset under the Debt Collection Act, courts, Congress, and agencies have all

drawn this distinction in related contexts. The Supreme Court, for example, recently held that the placing of an "administrative hold"—in which a bank freezes a depositor's account—does not constitute a setoff under the Bankruptcy Code provision prohibiting creditors from taking setoffs of a bankrupt's debts that arose before the commencement of the bankruptcy proceeding. In freezing the bankrupt's account, the Court explained, the bank refused to honor the bankrupt's demand for funds from the account "not permanently and absolutely, but only while it sought [judicial] relief" from the Bankruptcy Code's provision staying setoffs. *Citizens Bank,* —— U.S. at ——, 116 S.Ct. at 289. Similarly, here the Department is withholding the companies' overpayments, not permanently and absolutely, but only during the pendency of litigation to resolve the debts it may ultimately use the withheld money to satisfy through offset.

■ In reaching its conclusion about requirements for setoff under the Bankruptcy Code, *Citizens Bank* relied in part on the definition of setoff developed in many states, under which "setoff has not occurred until three steps have been taken: (i) a decision to effectuate a setoff, (ii) some action accomplishing the setoff, and (iii) a recording of the setoff." *Id.* (citing *Baker v. National City Bank of Cleveland,* 511 F.2d 1016, 1018 (6th Cir.1975); *Normand Josef Enters., Inc. v. Connecticut Nat'l Bank,* 230 Conn. 486, 646 A.2d 1289 (1994)). Although the elements of this definition take their particular meaning from the world of banking, they suggest the more basic principle applicable here: setoff occurs only after the party holding the money acts to make its taking of the money permanent and indicates as much by canceling the other party's debt in the amount taken.

Not confined to banking, the distinction between withholding and offset has been recognized in the context of claims by and against the Government as well. *See* 1A JOHN C. MCBRIDE ET AL., GOVERNMENT CONTRACTS § 7.70 (1995). The statute regulating resolution of claims against the Government, for example, directs the Comptroller General to withhold paying that part of a judgment

against the U.S. equal to a debt the judgment creditor owes the Government. 31 U.S.C. § 3728(a). If the judgment creditor agrees to "discharge a portion of the judgment equal to the debt," then the Comptroller General must take a "setoff," i.e. "discharge the debt." *Id.* § 3728(b). If the judgment creditor does not agree to the setoff, the statute directs the Comptroller General to initiate a civil action to recover the debt and requires him to continue withholding payment of an amount equal to the debt plus a sum to cover legal expenses during the pendency of the litigation. *Id.* The statute thus clearly recognizes a distinction between temporarily withholding payment of a debt while judicial proceedings are under way to recover the debt and offset itself, actually discharging the debt. As the District Court noted, several courts have acknowledged this distinction in the context of administrative offsets of contract debts, *see Tatelbaum v. United States,* 10 Cl.Ct. 207, 212 (1986), or of debts created through overpayment of government subsidies, *see Doko Farms v. United States,* 956 F.2d 1136, 1142–43 (Fed.Cir. 1992).

Finally, and again as the District Court emphasized, treating temporary withholding as indistinguishable from administrative offset would effectively undermine the Government's ability to exercise its offset authority. If agencies were required to afford Debt Collection Act procedural protections—notice, access to records, an opportunity for administrative review, and a chance to resolve the debt through written agreement— *prior* to withholding, they would have to release the money while they carried out the procedures, thus leaving them without funds either to withhold or, more important, to offset once the procedural steps had been completed. Temporary withholding thus serves as a necessary prerequisite for exercise of the authority to offset.

■ Because the Department's withholding does not constitute an administrative offset within the meaning of the Debt Collection Act, the Department had no obligation to afford the companies the procedural protections mandated by the Act. The companies contend that the Department's action was

illegal nonetheless because it deprived them of property without the due process of law guaranteed by the Fifth Amendment. In assessing constitutional due process claims, we ask two questions: Did the Government deprive the party of a protected property interest? If so, what process was due? *See, e.g., UDC Chairs Chapter, Amer. Ass'n of Univ. Professors v. Board of Trustees of the Univ. of the Dist. of Columbia*, 56 F.3d 1469, 1471 (D.C.Cir.1995). Answering the first question in the negative, the District Court concluded that the companies had no constitutionally protected property interest in the withheld lease overpayments for two reasons: the withholding was only temporary; and both the overpayments and the earlier underpayments the Department seeks to recover all formed "part of the same, continuing transaction." *Amoco Production Co. v. Fry*, 904 F.Supp. at 16 (D.D.C. 1995). On both points, we respectfully disagree.

The Supreme Court has repeatedly held that "even temporary or partial impairments to property rights ... merit due process protection." *Connecticut v. Doehr*, 501 U.S. 1, 12, 111 S.Ct. 2105, 2113, 115 L.Ed.2d 1 (1991); *see also, e.g., North Ga. Finishing, Inc. v. Di–Chem, Inc.*, 419 U.S. 601, 606, 95 S.Ct. 719, 722, 42 L.Ed.2d 751 (1975). Although temporary, the Department's withholding is hardly brief, having now gone on for more than four years. Moreover, it completely deprives the companies of access to the withheld funds. The District Court's conclusion that the withheld overpayments and the earlier lease underpayments all form part of the same transaction conflicts with its own finding that many of the earlier underpayments stem from leases on Indian and federal onshore land rather than ones on the outer continental shelf. *See Amoco Production Co.*, 904 F.Supp. at 16. Regardless of whether the overpayments and underpayments may accurately be characterized as products of the same transaction, the mandatory language of section 10 of the Outer Continental Shelf Lands Act gave the companies an entitlement to the return of the over-

payments once the statutory prerequisites were satisfied. *See supra* at 8–9. That language amounts to a "specific directive[ ] to the decisionmaker that if the [statute's] substantive predicates are present, a particular outcome must follow." *Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 463, 109 S.Ct. 1904, 1910, 104 L.Ed.2d 506 (1989); *see also, e.g., Washington Legal Clinic for the Homeless v. Barry*, 107 F.3d 32, 36 (D.C.Cir.1997).

■ Because the Department's withholding amounts to a deprivation of a protected property interest, we must consider what process is due. Notice and a meaningful opportunity to challenge the agency's decision are the essential elements of due process. *See, e.g., Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950). As we read the companies' briefs, their only due process complaint is that they were deprived of information essential to their case: a complete list of the underpayments justifying the Department's withholding and the audit calculations supporting the underpayment determinations along with the facts or records upon which those calculations rest. We agree with the companies that they were entitled to such information for, without it, they cannot effectively question whether the Government is withholding more than the amount of alleged underpayments with regard to which the companies have asserted statute-of-limitations defenses. Because we cannot determine from the record whether the Department gave the companies the information, however, we remand to the District Court to resolve the issue and order whatever additional disclosures are needed.

*So ordered.*