**DEPENDABLE INSURANCE COMPANY, INC.**

v.

**The UNITED STATES.**

No. 745–85T.

United States Claims Court.

July 29, 1987.

Francis J. Pelland, Washington, D.C., for the plaintiff; Gordon C. Murray, of counsel.

Terry T. Coles, Washington, D.C., with whom was Asst. Atty. Gen. Roger M. Olsen, for defendant.

## OPINION

MARGOLIS, Judge.

Plaintiff brought suit in its capacity as performance and payment bond surety on various government contracts to recover the balance on a government contract. Defendant moved for judgment on the pleadings or in the alternative for dismissal of the action. The court has considered the pleadings and the oral argument on the defendant's motion. For the reasons stated herein, the motion of the defendant is granted.

### FACTS

Plaintiff Dependable Insurance Company, Inc. is a Florida corporation qualified to write surety bond coverages. On October 6, 1981 plaintiff executed a standard form payment bond with Hermes Paint Contractors, Inc. that allowed Hermes to qualify for the award of contract N62477–80–C–0263 (contract 0263) with the Department of the Navy to repair the Navy Museum, Building 76, at the Washington Navy Yard. Plaintiff issued Payment Bond No. 1820 to Hermes to cover this contract with the Navy.

Plaintiff executed numerous payment and performance bonds with Hermes on many government contracts. Plaintiff claims that on all performance and payment bonds for Hermes covering federal government contracts, it has paid a total of approximately $632,000 and received contract balances of approximately $464,000, leaving a deficit of approximately $168,000.

In the course of performance of contract 0263, Hermes became in substantive default, so that between October, 1982 and May, 1983 plaintiff was required by the payment bond to pay unpaid bills to subcontractors and suppliers for labor and materials in the amount of $41,613.13 and expenses in the amount of $43,413.38. The Navy retains a contract balance of $41,022 on contract 0263. On July 27, 1983 the IRS served on the Navy a Notice of Levy on contract 0263 in the amount of $55,312.37 pursuant to 26 U.S.C. § 6331. The levy resulted from Hermes' failure to pay federal unemployment, withholding, and FICA taxes due the government.

Plaintiff brought suit in this court to recover the balance of $41,022 held by the Navy on contract 0263.

### DISCUSSION

Defendant moved for judgment on the pleadings or for dismissal of the action on two grounds: as a suit for wrongful levy the court lacks jurisdiction because the suit was not filed within the nine-month statutory limitation period contained in 26 U.S.C. § 6532(c), and as a suit for subrogation the plaintiff is not entitled to the funds as a subrogee of the subcontractors and suppliers, the prime contractor, or the United States. In its reply brief the defendant advised the court that it no longer relied on the wrongful-levy jurisdictional bar it originally raised; thus the court will not consider this issue. *See United States for the Use of P.J. Keating Co. v. Warren Corp.*, 805 F.2d 449, 453 (1st Cir.1986) (transfer of funds from Army to IRS was a set off and not a levy).

Plaintiff agrees that its claims to the funds as subrogee on a payment bond of the subcontractors and suppliers, and of the prime contractor, are subordinate to the right of the government to set off for unpaid federal taxes. Plaintiff alleges, however, that it is suing in its capacity as payment *and* performance bond surety on multiple contracts with the Navy, and it therefore is a subrogee of the United

States as well. Thus, plaintiff alleges, it is entitled to the funds free of the set off rights of the defendant. In addition, the plaintiff claims that at the time of the IRS levy on the Navy, plaintiff's rights to the contract balance had matured, and therefore there were no remaining funds on which the IRS levy could operate.

▇ The result of competing claims to a contract balance by a payment-bond surety is well settled. The government is entitled to set off the debts of a contractor against retained contract proceeds free of the claims of a payment-bond surety. *United States v. Munsey Trust Co.*, 332 U.S. 234, 244, 67 S.Ct. 1599, 1604, 91 L.Ed. 2022 (1947). Under a payment bond, the surety is responsible for unsatisfied debts of the prime contractor to its subcontractors, laborers, and suppliers; if the prime contractor does not pay them, the payment-bond surety must pay them. One who rests a claim on subrogation stands in the place of the one whose claim it has paid. *Id.* at 242, 67 S.Ct. at 1603. A payment-bond surety thus is subrogated to the rights of the laborers and suppliers it paid. Laborers and suppliers do not have enforceable rights against the United States, however, so this subrogation right is of no benefit to a payment-bond surety. *Id.* at 241, 67 S.Ct. at 1603. A payment-bond surety is likewise subrogated to the rights of the prime contractor whose debt it paid, but this right is of no avail to the surety in the circumstances of this case. In a dispute between the United States and the contractor over a claim to a contract balance, the United States has the "same right which belongs to every creditor" to set off funds in its hands against debts due it. *Id.* at 239, 67 S.Ct. at 1602 (*quoting Gratiot v. United States*, 40 U.S. (15 Pet.) 336, 370, 10 L.Ed. 759 (1841)).

▇ Based on the forgoing discussion, it is clear that plaintiff may not recover the contract proceeds based solely on its payment bond for contract 0263. Plaintiff is subrogated by that bond to the rights of the subcontractors and the prime contractor on the project. The subcontractors have no right against the government, both because they were paid and as a result of the operation of law. *Id.* at 241, 67 S.Ct. at 1602. The prime contractor has no defense to the set off rights of the government for the unpaid taxes. *Id.* at 239, 67 S.Ct. at 1601.

▇ The result of competing claims to a contract balance by a performance-bond surety and the government is also clear. In such a case, however, the surety receives the proceeds of the contract free of any set off by the government. *Security Insurance Company of Hartford v. United States*, 192 Ct.Cl. 754, 762, 428 F.2d 838, 842–43 (1970). A performance-bond surety is responsible for finishing the performance of an incomplete construction contract. The performance-bond surety protects the government by ensuring completion of partially-completed construction projects. A completing performance-bond surety is subrogated not only to the rights of the prime contractor, but also to the rights of the government itself. *Id.* at 762, 428 F.2d at 842 (*citing Trinity Universal Insurance Co. v. United States*, 382 F.2d 317, 320 (5th Cir.1967), *cert. denied*, 390 U.S. 906, 88 S.Ct. 820, 19 L.Ed.2d 873 (1968)). The completing surety is therefore protected from set off by its right to the contract proceeds equal to that of the government. *Id.* For a discussion of surety arrangements, see *Morrison Assurance Co. v. United States*, 3 Cl.Ct. 626, 632 (1983).

Plaintiff claims that it is suing in this court in its capacity as both a payment- and performance-bond surety on various government contracts. Plaintiff claims that it has no fewer rights than the defendant to set off funds against all accounts due it, and that there is no basis to find that its status as a subrogee to the United States ends when the balances are exhausted on contracts on which it executed performance bonds. Plaintiff asserts that allowing it to recover the retainage on this contract, on which it was a payment-bond surety, on the basis of performance-bond losses on other contracts, will further the policy of *Security Insurance* encouraging

performance-bond sureties to complete unfinished construction contracts.

■ The government has the right to set off its debts against those of a contractor. *Tatelbaum Creditors of A. Hoen & Co. v. United States,* 10 Cl.Ct. 207, 210 (1986). A government contractor, likewise, has the right to set off money due it by the United States against the funds of the United States in its hands. *Mazama Timber Products, Inc. v. United States,* 6 Cl.Ct. 87, 88–89 (1984). The plaintiff is correct that it may utilize a common-law right of set off against the United States in appropriate situations. In this case, however, plaintiff is not exercising a right of set off, as there are no funds in its hands against which to set off the debts due it on performance-bond losses. Plaintiff has not cited to the court any case where a right of "set off" was allowed a party where the funds were in the hands of another party. *Cf. Munsey Trust,* 332 U.S. at 239, 67 S.Ct. at 1602 (government has right of every creditor to set off debts due it against moneys "in [its] hands"); *Tatelbaum Creditors,* 10 Cl.Ct. at 210 (right of every creditor to apply moneys of its debtor "in [its] hands" to extinguishment of the debt); *Morrison Assurance,* 3 Cl.Ct. at 632 (government entitled to set off the debt of a contractor "against retained contract proceeds"). Thus the plaintiff is not asking for a "set off," but is requesting that it be allowed to recoup performance-bond losses through recovery of a balance on a contract where it was a payment-bond surety, and there is a competing claim to the funds by the United States for unpaid federal taxes.

■ Defendant alleges that plaintiff's rights and remedies are limited to the particular contract generating the retained funds that plaintiff seeks, and that plaintiff may not utilize its performance-bond surety status on unrelated contracts to avoid the result of *Munsey Trust.* The court agrees. A surety's remedies are limited to recovery from funds held by the government pursuant to the underlying construction contract. *Security Insurance,* 192 Ct.Cl. at 764–65, 428 F.2d at 844; *Universal Surety Co. v.*

*United States,* 10 Cl.Ct. 794, 797 (1986). Plaintiff has alleged no facts indicating that a wholesale refusal of performance-bond sureties to complete projects has occurred since the result in *Security Insurance* in 1970. The court therefore declines the plaintiff's offer to carve an exception to that rule for the circumstances of this case. The funds held by the government in this case remained on contract 0263, on which plaintiff was a payment-bond surety. The plaintiff specifically sued on that contract. In such circumstances, plaintiff's status as a payment-bond surety makes its right to the retained funds subordinate to the right of the government to set off the funds against unpaid federal taxes. *Munsey Trust,* 332 U.S. at 244, 67 S.Ct. at 1604.

■ Plaintiff's additional claim, that because the money was owed it by its status as a surety there were no funds remaining on contract 0263 at the time of the IRS levy, is similarly unavailing. In *Munsey Trust* the payment-bond surety paid the laborers and suppliers prior to its demand on the government for the contract balances in issue; only *after* the payment and the demand by the surety did the government deduct from the contract balances the funds it claimed through set off. *Munsey Trust,* 332 U.S. at 237–38, 67 S.Ct. at 1600–01. Even in those circumstances, where the plaintiff here would argue that the right of the surety to the funds had become "fixed," the government's right of set off was upheld. *Id.* at 244, 67 S.Ct. at 1604. In this case, the IRS levy that resulted in the set off was dated one month after the final payment was made by the plaintiff to the suppliers on the bond, and *Munsey Trust* gives priority to the government's set off claims against the claims of a payment-bond surety.

### CONCLUSION

Plaintiff sued for the contract balance on contract 0263 with the Navy on its Payment Bond No. 1820. The defendant is entitled to set off its claim for unpaid federal taxes against the contract balance despite the claim of the payment-bond surety. The motion of the defendant for judgment

on the pleadings is granted, and the Clerk will dismiss the complaint. Each party will bear its own costs.