**TRANSAMERICA INSURANCE CO., Plaintiff,**

v.

**UNITED STATES, Defendant.**

No. 90–280C.

United States Claims Court.

March 19, 1991.

John V. Burch, Atlanta, Ga., for plaintiff.

Richard E. Rice, Washington, D.C., with whom was Asst. Atty. Gen. Stuart M. Gerson, for defendant.

## OPINION

MARGOLIS, Judge.

This government contracts case is before the court on the defendant's motion for judgment on the pleadings requesting that the plaintiff's claim be dismissed for lack of jurisdiction and failure to state a claim upon which relief may be granted. The plaintiff, performance bond surety for a contractor on two contracts, brings suit against the government to recover, under the doctrine of equitable subrogation, funds payable by the government to the contractor under an equitable adjustment to the first contract. These funds are sought in order to mitigate losses incurred when the plaintiff took over and completed performance of the second contract, which the contractor had failed to complete. The defendant contends that this court lacks jurisdiction over the plaintiff's lawsuit because the plaintiff has not alleged any basis for privity of contract or standing to sue. The defendant also asserts that the plaintiff's rights and remedies under the doctrine of equitable subrogation are limited to the second contract, which the plaintiff took over and completed, and do not extend to the recovery of funds payable to the contractor under the first contract. After careful consideration of the pleadings and after hearing oral argument, this court

grants the defendant's motion for judgment on the pleadings and dismisses the complaint.

## FACTS

The Bodenhamer Building Corporation ("Bodenhamer") entered into separate contracts to construct two projects for the defendant, the United States, through the U.S. Army Corps of Engineers. Under the first contract, Contract No. DACA–21–85–C–0104 ("Contract 0104"), Bodenhamer was to construct the Commissary Warehouse and Class VI Store at Fort Bragg, North Carolina. Under the second contract, Contract No. DACA–21–87–C–0054 ("Contract 0054"), Bodenhamer was to construct the Bowley Elementary School, also at Fort Bragg. The plaintiff, Transamerica Insurance Company ("Transamerica"), is a surety bond company which issued payment and performance bonds on behalf of Bodenhamer.[1] The two construction contracts to be completed at Fort Bragg were bonded by Transamerica for the benefit of the government.

Bodenhamer defaulted on Contract 0054, the Elementary School project. Transamerica, pursuant to its obligations, took over and completed the project by obtaining a replacement contractor. Transamerica claims that it incurred losses under its performance bond in amounts in excess of $1,000,000. According to Transamerica, Bodenhamer completed the Commissary Warehouse project under Contract 0104, and filed a claim for equitable adjustment of the contract price with the U.S. Corps of Army Engineers in an amount exceeding $500,000.

Transamerica states that it stayed in close contact with the defendant, seeking to monitor Bodenhamer's claim on Contract 0104, the Commissary Warehouse project.

Transamerica asserts that it was assured that it would be notified before Bodenhamer's claim was satisfied. The defendant settled with Bodenhamer. Transamerica contends that again it was assured by the government that it would be notified before any payment was made. The plaintiff states that before funds were disbursed, it gave a written notification to the defendant that it sought the funds owed by the defendant to Bodenhamer. This was a claim, Transamerica contends, asserted under the doctrine of equitable subrogation. The government disbursed the funds to Bodenhamer.

Transamerica argues in this court that it has suffered damages as a result of defendant's disregard of the plaintiff's right of equitable subrogation, with the actual amount of damages to be shown at trial. The government denies that the plaintiff has any grounds for relief.

## DISCUSSION

### Jurisdiction

 The government argues that this court does not have jurisdiction over the plaintiff's action because there was no privity of contract between the plaintiff surety and the government with respect to Contract 0104. The government's argument misapprehends the basis of Transamerica's cause of action. Transamerica's claim for government funds owed to Bodenhamer under Contract 0104 is *not* based upon an alleged contractual relationship between Transamerica and the government under Contract 0104. Rather, Transamerica seeks to recover these funds based upon the contractual relationship between Transamerica and the government under Contract 0054 and upon the exercise of Transamerica's right of equitable subrogation[2] emanating from that relationship. There is

---

1. The Miller Act requires prime contractors on major federal construction projects to post both payment and performance bonds. *See* 40 U.S.C. § 270a (1988). In issuing a performance bond, a surety guarantees that the contract will be "performed" and the project completed if the bonded contractor defaults. *See Aetna Casualty & Surety Co. v. United States,* 845 F.2d 971, 973–74 (Fed.Cir.1988).

2. The doctrine of equitable subrogation recognizes that "a surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed." *Pearlman v. Reliance Insurance Co.,* 371 U.S. 132, 136–37, 83 S.Ct. 232, 235, 9 L.Ed.2d 190 (1962).

privity between Transamerica and the government under Contract 0054 because Transamerica assumed and completed performance of that contract. Transamerica asserts that through its right of equitable subrogation flowing from Contract 0054 it is entitled to recover government funds due to Bodenhamer under Contract 0104. Without yet passing on the merits of Transamerica's claim, this court finds that it has jurisdiction to decide the question because there is privity of contract between Transamerica and the government under Contract 0054. "Where, as here, the jurisdictional facts alleged are closely intertwined with the merits, the preferred practice is to assume subject matter jurisdiction exists and address the merits." *Ransom v. United States*, 17 Cl.Ct. 263, 267 (1989) (citing cases).

*Equitable Subrogation*

(a) Rights and Remedies Limited to Contract 0054

■ Case law makes clear that Transamerica, as the surety who completed Contract 0054, is entitled to retained funds held by the government from Contract 0054, free from set off by the government, under the doctrine of equitable subrogation. *Security Insurance Co. v. United States*, 192 Ct.Cl. 754, 760–65, 428 F.2d 838, 841–44 (1970). In our case, however, Transamerica attempts to assert its right of equitable subrogation, derived from its contractual relationship with the government under Contract 0054, to recover funds the government owed to Bodenhamer resulting from an equitable adjustment to Contract 0104. The government contends that Transamerica's rights and remedies under the doctrine of equitable subrogation are limited to Contract 0054, which Transamerica took over and completed, and do not extend to the recovery of funds payable to Bodenhamer under Contract 0104.

The rights and remedies of Transamerica, as a performance bond surety, are limited to Contract 0054, which it took over and completed. This statement is amply supported by the decision of the United States Court of Appeals for the Federal Circuit in *Dependable Insurance Co. v. United States*, 846 F.2d 65 (Fed.Cir.1988), *aff'g* 12 Cl.Ct. 711 (1987). In that case, a surety claimed losses as both performance and payment bond surety on multiple contracts between the government and the same contractor. On one of the contracts with the Navy, under which the surety was only a payment bond surety,[3] the surety and the Internal Revenue Service had competing claims to funds held by the Navy. Because the government's rights to retained contract proceeds are generally superior to those of a payment bond surety, the surety in *Dependable* attempted to use its status as a performance bond surety on unrelated contracts with the government to enlarge its rights under the Navy contract. The court rejected this argument, holding:

> Contrary to [the surety's] assertions, however, it cannot use its status as a performance bond surety on unrelated federal contracts to expand its right to retained contract proceeds under this Navy contract. A surety's rights and remedies are limited to recovery of retained funds from the contract generating the claim.

*Id.* at 67 (citing *Security Insurance*, 192 Ct.Cl. at 764–65, 428 F.2d at 844 ("plaintiff ... is not entitled to recover any amounts it may have expended pursuant to the payment or performance bonds [on a different project]"); *Balboa Insurance Co. v. United States*, 775 F.2d 1158, 1163 (Fed.Cir. 1985) (surety has right to funds retained by government "to the extent the surety has obligations arising under the contract"); *Ram Construction Co. v. American States Insurance Co.*, 749 F.2d 1049, 1055 (3d Cir.1984); *Western Casualty & Surety Co. v. Brooks*, 362 F.2d 486, 491 (4th Cir. 1966); *Universal Surety Co. v. United States*, 10 Cl.Ct. 794, 797 (1986) ("a surety's remedy is limited to recovery from a fund held by the government/owner pursuant to the construction contract")).

---

**3.** A payment bond surety is required to pay subcontractors, materialmen, and laborers if the prime contractor fails to do so. *See Aetna Casualty*, 845 F.2d at 973.

Transamerica contends that *Dependable* should be limited to the unique facts of that case, but this reading ignores the authorities cited and the broad language employed by the court in supporting its holding. Careful review of the cases cited in *Dependable* reveals that these authorities strongly support the conclusion drawn by the Federal Circuit that "[a] surety's rights and remedies are limited to recovery of retained funds from the contract generating the claim." *Id.*[4] The court also used broad language in supporting its holding:

> The mere fact that a surety enters into a number of construction bonds with the same contractor does not change that result.... Subrogation is bottomed "on the unpaid debts on each contract; relates back in time to the execution of that specific bond; and *is limited in scope to the debts arising under one contract.*"

*Id.* (citing and quoting *Western Casualty,* 362 F.2d at 491; citing *Ram Construction,* 749 F.2d at 1055). Under the holding, authority, and language of *Dependable,* Transamerica as performance bond surety on Contract 0054 is unable to recover funds the government owed to Bodenhamer on Contract 0104.

**(b) No Right of "Set Off"**

Transamerica further argues that it is entitled to "set off" funds owed to the government under Contract 0104 to mitigate losses incurred by Transamerica in completing Contract 0054. Transamerica contends that a surety is subrogated to *all* of the rights of both the defaulted contractor and the government. Furthermore, the government could "set off" funds owed by the government to Bodenhamer against funds owed by Bodenhamer to the government. Therefore, Transamerica asserts that it is able to "set off" government funds owed to Bodenhamer under Contract 0104 to mitigate losses incurred by Transamerica in completing Contract 0054.

This argument also fails. The Federal Circuit made clear in *Dependable* that "a completing surety does not become subrogated to 'all of the government's rights,' [but rather] only [to] the rights of the government on the contract of which it completes performance." *Id.* at 67–68 (citing *Western Casualty,* 362 F.2d at 491). Furthermore, it is true that a government contractor has the right to set off money due it by the United States against funds of the United States in the hands of the contractor. *Dependable Insurance Co. v. United States,* 12 Cl.Ct. 711, 714 (1987) (citing *Mazama Timber Products, Inc. v. United States,* 6 Cl.Ct. 87, 88–89 (1984)). In this case, however, Transamerica does not have, and is not exercising, a right of set off because there are no government funds in the hands of Transamerica against which to set off the debts due it on performance-bond losses. *Id.* (citing cases).

## CONCLUSION

This court has jurisdiction to hear the plaintiff's claim. However, the plaintiff's rights and remedies under the doctrine of equitable subrogation are limited to the contract which the plaintiff, as performance bond surety, took over and completed, and do not extend to the recovery of funds payable to the contractor under an unrelated contract. Because the plaintiff fails to state a claim upon which relief may be granted, the defendant's motion for judgment on the pleadings is granted. The plaintiff's complaint is to be dismissed with prejudice. The Clerk is directed to enter judgment accordingly.

---

**4.** This conclusion is consistent with the statement in *Prairie State Bank v. United States,* 164 U.S. 227, 17 S.Ct. 142, 41 L.Ed. 412 (1896), a case which Transamerica admits represents the United States Supreme Court's first recognition of a surety's right to equitable subrogation, that a "surety *on the original contract,* was entitled to assert the equitable doctrine of subrogation ..." *Id.* at 231, 17 S.Ct. at 144 (emphasis added).